Ray Lee WELCH *v.* STATE of Arkansas

CR 79-192                                          599 S.W. 2d 717

Supreme Court of Arkansas
Opinion delivered June 9, 1980
Rehearing denied July 7, 1980

*Lessberry & Carpenter*, for appellant.

*Steve Clark*, Atty. Gen., by: *Mary Davies Scott*, Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. On the night of June 1, 1975, three armed men — Winston Holloway, Gary Don Campbell, and the appellant Ray Lee Welch — entered the Leather Bottle, a Little Rock restaurant, after closing hours but when five employees were still on the premises. According to the State's proof, the intruders committed robbery and raped the two women who were there.

The three men were jointly charged with robbery and two counts of rape, all three offenses having been committed with a firearm. At a joint trial all three men were convicted, with sentences of life imprisonment for each of the rapes and 21 years for robbery. Most of the essential facts are stated in our opinion on the first appeal, affirming the convictions. *Holloway* v. *State*, 260 Ark. 250, 539 S.W. 2d 435 (1976). That decision was reversed because the three defendants were not provided with separate counsel. *Holloway* v. *Arkansas*, 435 U.S. 475 (1978). Welch was then tried separately, found guilty of all three offenses, and sentenced by the jury to 18 years for

each of the two rapes, with 5 years enhancement of each sentence for the use of a firearm, and to 7 years for the robbery, with 3 years enhancement for the use of a firearm. The trial judge directed that the sentences, totaling 56 years, run consecutively. Six points for reversal are argued.

First, it is argued that the jury panel should have been quashed. The names of prospective jurors were selected at random, placed in alphabetical order, and put in the jury wheel as required. Ark. Stat. Ann. § 39-205.1 (Supp. 1979). An active panel of a smaller number of jurors was then drawn from the wheel. The appellant complains that the bailiff put this smaller list in alphabetical order and eventually summoned the jurors in that order rather than in the order in which their names had been drawn from the wheel. The statute, Section 39-209.1, requires that the names be recorded in the jury book in the same order as they are drawn, which was done, but it does not specify the order in which they are to be summoned.

No error is shown, because no possibility of prejudice has been suggested. The statute is not mandatory in the sense that a failure to comply strictly with a particular provision requires that the entire panel be quashed. *Huckaby* v. *State*, 262 Ark. 413, 557 S.W. 2d 875 (1977). The bailiff testified that he put the names in alphabetical order as a convenience, to help him in locating the jurors and to help attorneys in matching the names with the individual jurors' information sheets. That was a common-sense procedure. There were 70 names on the active list. The alphabetical listing was just as random and impartial as any other procedure. There is no hint that alphabetical order was chosen for a sinister purpose. Moreover, all 70 jurors were actually called in this case; so the objection narrows down not to which ones were called but to the order in which they were called. In the absence of any showing whatever of possible prejudice, the trial judge was right in denying the motion to quash the panel.

Second, it is argued that a certain undated, unsigned written statement, assertedly made by one of the robbers, Campbell, was admissible in evidence. At the outset the robbers lined the five employees up, facing a wall, and com-

manded them to keep their eyes closed. Somewhat later Holloway took one of the women, Mary, to some stairs and raped her. Still later Mary was raped by a second man, who must have been Welch, as Mary was certain it was not Holloway or Campbell. At about the same time the other woman, Robin, was raped by a man who must have been Campbell, as Robin was certain it was not Holloway or Welch. Welch testified that he had nothing to do with any of the three rapes, but under the court's instructions he could have been found guilty as a principal without having actually been the rapist.

Welch, in his testimony, identified the statement in question as having been written by his half brother, Campbell, about two months before the trial in June, 1979. In the statement Campbell said that Holloway held a gun on him and forced him to rape Robin (or possibly Mary; the statement is vague), so that the women would not know who had raped them. Campbell refused to testify at the trial, pleading the Fifth Amendment, and was therefore unavailable as a witness, as provided by Uniform Evidence Rule 804 (a) (1), Ark. Stat. Ann. § 28-1001 (Repl. 1979).

Under the Uniform Rules of Evidence a statement tending to subject an unavailable declarant to criminal liability is not excluded as hearsay if it meets these requirements of Rule 804 (b) (3):

Statement against interest. A statement which . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

By the explicit language of the Rule this particular statement was not admissible unless corroborating circumstances *clearly* indicate its trustworthiness. That condition is of primary importance, for without it an accused could fabricate

a tale that he met a stranger on the street who admitted having committed the offense on trial. Other witnesses could also be called to testify that the stranger made the statement.

The question is, did the trial judge abuse his discretion in finding, as a preliminary matter, that the statement was not clearly shown to be trustworthy? See *United States* v. *Guillette*, 547 F. 2d 743 (2d Cir., 1976). "Trustworthy" means deserving of confidence; dependable; reliable. Random House Dictionary (1966). Here the statement was not made until four years after the crime, on the eve of Welch's trial. Campbell apparently made it to help his half brother, but he protected himself by not signing it and by asserting that he committed the rape at gunpoint – an inherently unlikely occurrence. No other testimony suggests that anything of the kind took place. The statement is apparently a fabrication, but in any event we cannot say that corroborating circumstances clearly indicate its trustworthiness.

Third, Welch questions enhancement of the punishment under the firearm statute. Two arguments are made: One, since robbery is a crime of violence, the punishment cannot be increased because a deadly weapon was used. Welch was charged·under a former statute, which defined robbery as the felonious and violent taking of anything of value from the person of another by force or intimidation. Ark. Stat. Ann. § 41-3601 (Repl. 1964). That statute made no reference to the use of a deadly weapon; so robbery could have been committed without the use of a firearm. Therefore the firearm enhancement for robbery was not eliminated by the new Criminal Code. Ark. Stat. Ann. § 41-1004 (Repl. 1977); *Rust* v. *State*, 263 Ark. 350, 565 S.W. 2d 19 (1978). Two: It is argued that the punishment for each of the three offenses cannot be enhanced, because all three were parts of a single criminal episode. Even so, the robbery and the two rapes were separate offenses, each of which could have been committed with or without a firearm. No double jeopardy is involved, because there is no constitutional barrier to the enhancement of the separate punishment for each of three distinct crimes, all of which were committed with a firearm.

Fourth, it is argued that a mistrial should have been

granted (A) when a witness mentioned a necklace not connected with the robbery and (B) when the prosecutor objected, out of the hearing of the jury, to part of defense counsel's closing argument. Both incidents were trivial, in that the jury heard nothing that was prejudicial. It is argued that the court's prompt admonitions to the jury amounted to comments on the evidence. Not only do we find that contention to be without merit, but also no such objection to the admonitions was made below.

Fifth, the three sentences imposed at the first trial — two life sentences and one 21-year sentence — ran concurrently, because the judgments did not state they ran consecutively. Ark. Stat. Ann. § 41-903; *Williams* v. *State*, 229 Ark. 42, 313 S.W. 2d 242 (1958). It is now argued, on the authority of *North Carolina* v. *Pearce*, 395 U.S. 711 (1969), that the trial judge could not impose a more severe sentence at the second trial, by making the sentences run consecutively, without an affirmative showing of his reasons for increasing the severity. That may be true, even though the jury fixed the sentences, but the trouble is that the appellant has not shown that the consecutive sentences are more severe than the first ones. We recognize, of course, that owing to executive clemency and the allowance of credits for good behavior a person sentenced to life imprisonment hardly ever spends the rest of a normal life span in prison. See *Rummel* v. *Estelle*, 63 L. Ed. 2d 382 (1980). But here the appellant's new sentences total only 56 years, and we must also recognize the improbability that he will spend that length of time in prison. It is impossible for us to say as a matter of law that a 56-year sentence is more severe than a life sentence. Consequently the appellant has not demonstrated a violation of the principle laid down in *Pearce*.

Sixth, Welch was confined in jail or prison for some four years between the time of his arrest and the date of the second trial. It is now argued, again on the authority of *Pearce*, that he must be given credit for those four years against each of the three basic new sentences and against each of the three enhancements for the use of a firearm. We need not discuss the latter credits at length, because the original firearm statute specifically provided that the enhancement for the use of a

firearm must run consecutively to the basic sentence. Act 78 of 1969; Ark. Stat. Ann. § 43-2337 (Supp. 1975). That is also true under the Criminal Code, which provides that the use of a firearm simply increases by 15 years the permissible maximum punishment. Section 41-1004 (Repl. 1977). Hence the firearm enhancements must always run after the basic sentences and cannot be affected by the concurrent running of the original sentences.

Nor are we persuaded that three separate credits of four years each must be allowed upon the three new basic sentences. In *Pearce* the court recognized that the law's premise that the granting of a new trial wipes the slate clean is an unmitigated fiction with respect to whatever punishment the defendant has already suffered under the first conviction. But it is also a fiction to declare that a prisoner serving time for three concurrent sentences is being punished three times more severely than another prisoner serving time in the same cell for only one offense. In that respect it is not a fiction to say that the slate is wiped clean if credit is given. In *Pearce* the court held that "punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." But here there were three different offenses. They cannot be separated into compartments, especially as the original life sentences encompass any lesser terms of years. Under our law the new sentences, totaling 56 years, must, for parole eligibility purposes, be treated as a single commitment for that length of time. § 43-2807 (Repl. 1977). Welch is entitled to credit for his total jail time, but nothing more. The trial court was right in ordering that Welch's jail-time credit be allowed a single time in reduction of the total sentence.

Affirmed.