Randall WILSON *v.* STATE of Arkansas

CR 80-175                                         611 S.W. 2d 739
Supreme Court of Arkansas
Opinion delivered January 12, 1981
[Supplemental opinion on Denial of Rehearing March 9, 1981.]

*E. Alvin Schay*, State Appellate Defender, by: *Ray Harten-stein*, Chief Deputy Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *C. R. McNair, III*, Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Appellant, Randall Wilson, was convicted at trial below of capital murder in the death of Sharon Taylor and was sentenced to life in prison without parole.

The evidence in this case reveals that the body of Sharon Taylor was found beaten and strangled in a barn near Lowell, Arkansas, June 2, 1979. Medical testimony in the case was uncertain as to which of the two injuries was the actual cause of death, either being sufficient.

The body was found partially nude, the hands and feet of the victim having been bound with baling twine or rope.

Medical evidence established that the victim had had recent sexual intercourse, with marks found on the body consis-

tent with forcible intercourse.

Appellant testified that he had driven his car to the Taylor residence in the early morning hours of June 2, 1979, and that the deceased voluntarily left with him in his car. Appellant testified he drove the two of them to the barn.

Appellant admitted that he killed the deceased by striking her with a rock. Appellant denied that he had strangled the victim and denied ever having sexual intercourse with her.

Appellant alleged that he killed Sharon Taylor because she was attempting to blackmail him and threatening to testify against him in a child custody hearing between Wilson and his former wife.

Appellant denied he had kidnapped the deceased from her home. He alleged that Sharon Taylor had voluntarily left her home with him, leaving her two small children alone in the house asleep.

At the conclusion of all the testimony, the trial court instructed the jury on capital murder, murder in the first degree, murder in the second degree, and manslaughter. The jury retired for deliberations and returned a verdict of guilty of capital murder.

The court then received evidence of aggravating and mitigating circumstances, and the jury again retired to consider the punishment, returning a sentence of life in prison without parole.

Appellant brings this appeal asserting that the statutes involved, Ark. Stat. Ann. §§ 41-1501 and 41-1502, are unconstitutional in their application to the present case. In support of such contention, appellant makes several arguments which we discuss separately.

First, appellant argues that the overlapping nature of § 41-1501(1)(a) and § 41-1502(1)(a) renders the statutes unconstitutional since they would allow for *de facto* sentencing in

an arbitrary and capricious manner. In support of this argument, appellant cites this court to *Roberts* v. *Louisiana*, 428 U.S. 325 (1976). We disagree with the argument.

Arkansas' capital murder statute, Ark. Stat. Ann. § 41-1501, provides in pertinent part:

> (1) A person commits capital murder if: (a) acting alone or with one or more other persons, he commits or attempts to commit rape, kidnapping, arson, vehicular piracy, Robbery, burglary, or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; . . . .

Arkansas' first degree murder statute, Ark. Stat. Ann. § 41-1502, provides in pertinent part:

> (1) A person commits murder in the first degree if:
> (a) acting alone or with one or more persons, he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life.

In *Cromwell* v. *State*, 269 Ark. 104, 598 S.W. 2d 733 (1980), we noted that the mere overlapping of the statutory provisions did not render the statute unconstitutional:

> We are unwilling to say that the reference in Section 41-1502(1)(a) to 'a felony' was meant to exclude the seven felonies specified in the preceding section . . . . In any event, we find no constitutional infirmity in the overlapping of the two sections, because there is no impermissible uncertainty in the definition of the offenses. *Cromwell*, at 107-108

In *Roberts* v. *Louisiana*, 428 U.S. 325 (1976), the Supreme Court struck down Louisiana's mandatory death penalty for

first degree murder. Under the Louisiana statutes, the jury was compelled to return a verdict of either guilty, guilty of second degree murder, guilty of manslaughter, or not guilty. The Court typified this statutory scheme as one which "invites the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they feel the death penalty inappropriate."

In striking down the Louisiana statute, the Court said:

There is an element of capriciousness in making the jurors' power to avoid the death penalty dependent on their willingness to accept this invitation to disregard the trial judge's instructions. *Roberts*, at 335.

Unlike the statutory scheme in Louisiana, the Arkansas statutes do not make avoidance of the death penalty dependent on the jury's disregard of the law. In the event the jury finds the defendant guilty of capital murder, as in the present case, the jury is vested with the power to sentence the defendant to either the death penalty or life imprisonment without parole, as here. Additionally, since the capital murder statute and the first degree murder statute overlap in circumstances such as the present case, the jury may refuse consideration of the death penalty by returning a guilty verdict as to the charge of murder in the first degree but not as to the capital murder.

Second, the appellant argues that the application of the capital murder statute precludes consideration of the lesser offense of murder in the first degree. The argument is without merit.

As recently as *Brewer* v. *State*, 271 Ark. 254, 608 S.W. 2d 363 (1980), we held in the circumstances of that case that it was reversible error to fail to instruct the jury as to murder in the first degree where defendant is charged with capital murder.

In the present case, the trial judge instructed the jury as to capital felony murder, murder in the first degree, murder in the second degree, and manslaughter. We find no error.

Third, the appellant argues the application of the capital murder statute to the present facts relieves the state of the burden of proving each element necessary to constitute a higher degree of culpability than the first degree murder statute. Here the appellant also argues that the classification of crimes is unreasonable.

However, the constitutional protection afforded the defendant is a guarantee against the arbitrary and capricious isolation of one group of offenders for more severe punishment than that punishment given some other group for the same offense. *Gregg* v. *Georgia*, 428 U.S. 153 (1976). The classification of the crimes themselves lies within the sound discretion of the legislature.

Further, we find nothing in either statute which relieves the state of the absolute burden of proving each element of the offense beyond a reasonable doubt.

Fourth, the appellant contends that the sentence imposed, life without parole, is excessive and disproportionate to the crime and therefore constitutes cruel and unusual punishment prohibited by the Eighth Amendment.

No contention is made here that the sentencing was not in compliance with the procedures of Ark. Stat. Ann. § 14-1301 *et seq.* We have long held that a sentence within the statutory limits is not cruel and unusual punishment. *Duncan* v. *State*, 267 Ark. 41 (1979). And, in fact, this court has specifically held that life without parole is not cruel and unusual punishment for capital murder. *Dyas* v. *State*, 260 Ark. 303, 539 S.W. 2d 251 (1976); and *McCree* v. *State*, 266 Ark. 465, 585 S.W. 2d 938 (1979).

Finally, the appellant argues that the distinction bebetween capital murder and murder in the first degree lies in the presence of aggravating circumstances, and that in order to sustain a conviction for capital murder there must be a finding of some aggravating circumstance. This argument is wholly without merit.

Nothing in either of §§ 41-1501 or 41-1502 makes

aggravating circumstances an element of the offenses. The current Criminal Code took several years to produce and was adopted by the General Assembly only after careful consideration. We find nothing in the legislative history of the statutes or the Commentary to the sections in question to indicate that the intent was to distinguish between capital felony murder and murder in the first degree according to the presence or absence of aggravating circumstances.

Aggravating circumstances are not an element of capital murder as defined in Ark. Stat. Ann. § 41-1501, and the presence of aggravating circumstances is not necessary to support a conviction under that section.

The presence of aggravating or mitigating circumstances is relevant only to the determination of sentence under Ark. Stat. Ann. § 41-1301 *et seq.*, as was done here.

We have also examined the record for all other legal errors, as is our practice in cases of like punishment, and finding none prejudicial, affirm the conviction and punishment.

Affirmed.

Supplemental Opinion on Rehearing
delivered March 9, 1981

STEELE HAYS, Justice. In our original opinion in this case, *Wilson v. State*, 271 Ark. 682, 611 S.W. 2d 739 (1981), we rejected appellant's argument that the Arkansas capital murder statute, Ark. Stat. Ann. § 41-1501 was unconstitutional as applied to the appellant. On this rehearing, we again affirm the conviction but find it necessary to issue this supplemental opinion to clarify language which appellant cites as confusing. The appellant has reargued that the overlapping nature of Ark. Stat. Ann. §§ 41-1501 and 41-1502(a) renders the statutes unconstitutional under *Roberts v. Louisiana*, 428 U.S. 325 (1976) and *Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382, 65 L.Ed. 2d 232 (1980), insisting that our original opinion recognizes the validity of the argument without disposing of it.

In a line of cases beginning with *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 2d 346 (1972), the Supreme Court began a careful scrutiny of the constitutionality of the

application of the death penalty. In *Furman*, the Court struck down a Georgia statute which allowed the jury complete discretion in imposing capital punishment. Such discretion led to "wanton and freakish" imposition of the death penalty in violation of the Eighth Amendment. *See*, Stewart, J. concurring, at 310.

Following *Furman*, the Court made it clear that the constitutional protection afforded an accused is a guarantee against the arbitrary and capricious isolation of one group of offenders for punishment more severe than that given another group of offenders. *Gregg* v. *Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). In *Gregg*, as in *Furman*, the Court was passing on the constitutionality of how the sentence was determined. In *Beck*, the protections afforded under *Furman* and *Gregg* were extended from the sentencing determination to the guilt determination.

In examining the Arkansas statutes, Ark. Stat. Ann. §§ 41-1501 and 41-1502(a), we have interpreted the statutes as intentionally overlapping, while holding that such overlapping does *not* render them unconstitutional. *Cromwell* v. *State*, 269 Ark. 104, 598 S.W. 2d 733 (1980). We adhere to that view and point out that neither *Beck* nor *Roberts*, nor any authority given us by appellant, holds that overlapping alone creates a constitutional deficiency.

Appellant's petition for rehearing relies heavily on *Beck* v. *Alabama* and *Roberts* v. *Louisiana, supra*. These cases involve the scrutiny of state statutes enacted in apparent response to *Furman*. Both defendants were given the death penalty. In *Beck*, Alabama law made felony murder a lesser included offense to the capital crime of robbery-intentional killing. In Alabama, the trial judge is prohibited from giving the jury the option of convicting the defendant of a lesser included offense and, thus, a jury must either convict the accused of a capital crime, in which case it *must* impose the death penalty, or acquit him. If the verdict is guilty, the trial judge then conducts a hearing to consider aggravating/mitigating circumstances and he may then impose the death sentence or life imprisonment. In *Beck*, the jury imposed a sentence of

death and the trial judge refused to overturn the sentence. The errancy of Alabama's statutory scheme, according to *Beck*, was in the apparent mandatory nature of the death penalty and the unavailabilty of the lesser included offense as a "third option" to the jury. The court held that the absence of the opportunity to convict the defendant of a lesser included offense deprived the defendant of the full benefit of the reasonable doubt standard.

In *Roberts*, the statutory procedure of Louisiana in capital cases was examined. Under Louisiana law, a verdict of guilty in a first degree murder charge is dependent upon a finding by the jury that the defendant had a specific intent to kill *and* was engaged in one of several felonies, in this case, armed robbery. The death penalty is mandatory on such a verdict. The jury is always instructed as to lesser offenses, irrespective of whether the evidence supports a lesser verdict. The court compared the Louisiana scheme to that of North Carolina, invalidated on the same day (*Woodson* v. *North Carolina*, 428 U.S. 289), declaring it unconstitutional in that it "plainly invited the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they feel that the death penalty is inappropriate." The errancy in this statutory scheme, as the Court found, is that merely by determining that both conditions existed, i.e., a specific intent to kill and armed robbery, the jury was compelled to return a verdict of death. In both instances, any qualification of the sentence or recommendation of mercy by the jury is without effect.

We hardly need point out, but do so again, that our statutes are vastly different from those of Louisiana and Alabama and are not tainted by the same flaws. The jury is free to convict on capital felony murder or of lesser included offenses. Furthermore, the jury is *not* compelled to impose death even if it finds the defendant guilty of the greater offense, capital felony murder, as it is still free to sentence the defendant to life without parole after considering the mitigating/aggravating circumstances. .It is true that there is some overlapping in our two statutes but as pointed out in *Cromwell*, it is impossible to entirely avoid the use of general language in the definition of certain offenses and, further-

more, the actual wording of the statute may have been deliberate to lighten the possible punishment that might be imposed. We conclude that the overlapping aspect of our statutes does not bring them within the shadow of either *Beck* or *Roberts*.

Rehearing denied.