Jarvis RHODES *v.* STATE of Arkansas

CR 86-12                                        716 S.W.2d 758

Supreme Court of Arkansas
Opinion delivered September 29, 1986

62

*Hall & Vaught*, by: *Larry D. Vaught*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. We must reverse this capital felony murder conviction because of the equivocation of a juror, upon being polled, as to his verdict. We will discuss the appellant's other points only to the extent it is necessary to avoid error if the case is retried.

### 1. The undecided juror

At the conclusion of the trial, the appellant's counsel asked that the jurors be polled as to their verdict of guilty. When the court inquired of juror Washington, the following occurred:

Court: Mr. Washington, is this your verdict?

Mr. Washington: It is, with a question.

Court: Sir?

Mr. Washington: It is, with a question.

Court: What is your question? What do you mean?

Mr. Washington: I mean I signed it with a question mark. I wasn't sure.

Court: You weren't sure about what, sir?

Mr. Washington: I wasn't sure either way.

Court: Well, then what you're saying this is not your verdict?

Mr. Washington: I agreed to it after we discussed it and they brought out some fine points. I agreed to it.

Court: Well, are you convinced of — you were instructed that you had to be convinced of Mr. Jarvis Rhodes' guilt beyond a reasonable doubt, and reasonable doubt was explained to you. Are you convinced —

Mr. Washington: I'm sure.

Court: Sir?

Mr. Washington: I'm sure.

We have been cited to no Arkansas authority dealing with this situation, and we know of none. In Georgia, it has been held that when two jurors replied, upon being polled, that their verdicts were "with question," their affirmative votes were held to be sufficient to show the requisite unanimity. The court's rationale was that the state need only prove its case to a juror beyond a reasonable doubt, and need not remove every question. *Watts* v. *State*, 142 Ga. App. 857, 237 S.E.2d 231 (1977). We find that rationale to be unsatisfactory. If the question on the juror's mind is the ultimate one of whether the accused is guilty, as was apparent in this case, then that juror is expressing a reasonable doubt, and the verdict is not unanimous.

In *United States* v. *Sexton*, 456 F.2d 961 (9th Cir. 1972), a juror responded to being polled by saying, "I didn't vote either way." The court then said, "Well, is it your verdict?" and the juror said, "Yes sir." In reversing the conviction, a number of federal cases dealing with this problem were reviewed by the court of appeals. The court concluded that when a juror casts doubt on whether the verdict rendered is his or her verdict, and

the court questions the juror until the juror casts an unequivocal vote, the juror is voting in the courtroom rather than in the jury room. We agree that is improper. Although there are some cases in which courts have been able successfully to question a juror in open court and remove confusion without being reversed, those are rare circumstances in which, e.g., the confusion is caused by the inability of the juror to hear the question, *Williams* v. *United States*, 419 F.2d 740 (D.C. Cir. 1969), or a juror is reluctant, based on religious scruples to use the word "guilty", *United States* v. *Lawrence*, 618 F.2d 986 (2nd Cir. 1980).

■ The instant it appears that the guilty verdict is not unanimous because of a juror's response to being polled, the jurors must be returned to the jury room for further deliberation, otherwise the trial judge runs the risk of conducting a proceeding which, albeit well meant, will have the palpable effect of coercion. *See Jones* v. *United States*, 273 A.2d 842 (D.C. App. 1971).

### 2. First degree murder instruction

The evidence upon which the appellant was convicted included police testimony showing statements of two men who said they were with the appellant the night the murder occurred. The three had planned to commit a burglary but the two other than the appellant backed out at the last minute because they were acquainted with the residents of the house they ultimately said they saw the appellant approach. The evidence also showed the victim's purse was found in an abandoned building several blocks from her house.

■ The appellant was charged with killing the victim in the course of a burglary. Ark. Stat. Ann. § 41-1501 (Repl. 1977) provides, in relevant part, as follows:

A person commits capital murder if:

(a) acting alone or with one or more other persons, he commits or attempts to commit rape, kidnapping, arson, vehicular piracy, robbery, burglary, or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; . . . .

Ark. Stat. Ann. § 41-1502 (Repl. 1977) provides, in relevant part, as follows:

A person commits murder in the first degree if:

(a) acting alone or with one or more other persons, he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; . . . .

While § 41-1502(1)(a) is broader than § 41-1501(1)(a) in that one may be in violation when a killing occurs in the course of a felony other than the ones named in § 41-1501(1)(a), it is obvious that if, as in this case, evidence shows one is guilty of homicide in the course of a burglary, it also shows one to be guilty of homicide in the course of "a felony" as provided in § 41-1502(1)(a).

■ Ark. Stat. Ann. § 41-105(2)(a) (Repl. 1977) provides:

A defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:

(a) it is established by proof of the same or less than all the elements required to establish the commission of the offense charged; . . . .

This statute thus makes it clear that when capital felony murder is charged under § 41-1501(1)(a), first degree felony murder is "a lesser included offense" because the same evidence used to prove the former of necessity proves the latter. Therefore, an instruction on first degree murder is required. We said as much in obiter dictum in *Wilson* v. *State*, 271 Ark. 682, 611 S.W.2d 739 (1981), reh. den., 271 Ark. 687A, 611 S.W.2d 742 (1981).

In the *Wilson* case, we were concerned with the ancillary problem, not raised here, of whether the overlap in our capital murder and first degree murder statutes made them unconstitutional. In *Roberts* v. *Louisiana*, 428 U.S. 325 (1976), the Supreme Court held the Louisiana statutory scheme unconstitutional because it required the trial judge to instruct on a number of homicide lesser included offenses in any case in which first degree murder, which carried a mandatory death penalty, was

charged. The Supreme Court said this practice allowed the jury to avoid its duty to impose the death penalty by capriciously choosing a lesser offense when it felt the death penalty inappropriate despite lack of evidence to support a lesser included offense. We held in the *Wilson* case that our overlapping statutes did not run afoul of the Supreme Court decision and that our statutes do not allow the jury to sentence one convicted of homicide in an arbitrary and capricious manner.

■ The effect of § 41-105(2)(a) and of our decision in the *Wilson* case, and we say it more directly here, is that when one is charged with homicide in the course of committing one of the felonies named in § 41-1501(1)(a), the judge must also instruct on first degree murder, § 41-1502(1)(a). If the jury convicts the accused of capital felony murder, the sentence may be death or life imprisonment without parole. Ark. Stat. Ann. § 41-1501(3) (Supp. 1985). If the jury convicts of first degree murder, a lesser sentence may be imposed. First degree murder is currently a class Y felony, Ark. Stat. Ann. § 41-1502(3) (Supp. 1985), punishable by a sentence of not less than ten nor more than forty years or life imprisonment.

■ We do not find the failure to instruct on first degree murder in this case to be reversible error, however, because the objection of counsel was that the court should have given the instruction because of evidence, which counsel could not recite, that the appellant entered the victim's residence for "a purpose other than to commit a burglary." That objection hardly raised the point argued on appeal which we have discussed here for the benefit of the court and the parties in the event of retrial.

### 3. Evidence of previously committed offenses

The appellant argues that by allowing introduction of evidence that he is serving a penitentiary sentence the court erred because such evidence shows he has been convicted of other, irrelevant crimes and he has thus been prejudiced. *See* Uniform Rule of Evidence 404(b). He also argues the prosecutor should not have been allowed to mention in his opening statement that the appellant was in the penitentiary.

■ Much of the evidence in this case consisted of testimony of prison inmates as well as one guard relating admissions made

by the appellant. The trial court had ruled that it would be inevitable that this evidence would show the appellant to have been in the penitentiary when the admissions were made, but that the evidence would be allowed. In *Glick* v. *State*, 275 Ark. 34, 675 S.W.2d 14 (1982), we were confronted with this situation, and we held it was not error to permit the evidence to come in. We also said that the prosecution could not make direct proof of the fact that the appellant had been in the penitentiary and should not draw needless attention to it.

Given the fact that the evidence indirectly showing that the appellant was in the penitentiary was admissible, we cannot say it was error for the prosecutor to have mentioned it in his opening statement. We adhere to our statement in the *Glick* case that unnecessary attention should not be drawn to prejudicial evidence which is admissible only because its presentation is inevitably incidental to admissible evidence. However, we decline to say a prosecutor may not mention in opening statement any fact which it is permissible for him to present to the jury. Our view might be different if the prosecutor had gone beyond the mere mention of the appellant's imprisonment, but we need not decide that now.

### 4. Pre-indictment delay

We find no error in the delay between 1981, the year the crime was committed, and 1984, the year the charges were brought against the appellant. The only bases for suspecting the appellant prior to 1984 were evidence that he had scratches on his body, which could have been inflicted by the victim, shortly after the date of the homicide, and the statements of three convicted felons, two of whom said they had been with the appellant outside the victim's house, on the night of the homicide, planning to burglarize it. The appellant had denied any participation. In 1984, the evidence of the appellant's admissions to, and in the presence of, fellow inmates was discovered. We agree with the trial court that under these circumstances the delay was satisfactorily explained by the principal police investigator who felt his case was insufficient until the admissions came to light. Cf. *Scott* v. *State*, 263 Ark. 669, 566 S.W.2d 737 (1978). We cannot say the prosecution delayed to gain a tactical advantage. *Bliss* v. *State*, 282 Ark. 315, 668 S.W.2d 936 (1984).

### 5. Communication with the jury during deliberation

After the jurors began deliberating the case, they sent a note to the judge asking a factual question. Upon agreement of the appellant's counsel and the prosecutor, the judge returned a note to the jurors with the answer. The same thing occurred two more times, and on the fourth occasion, the appellant's lawyer refused to consent to allowing the judge to answer the question by returning a note to the jurors with the answer to the question. Instead, the judge sent a note in which he declined to answer the question but offered to send the jurors a tape recording of the proceedings.

The judge should not have communicated with the jurors in this fashion. Although the facts in *Tarry* v. *State*, 289 Ark. 193, 710 S.W.2d 202 (1986), are distinguishable from those before us now, we made it clear in that case that the provisions of Ark. Stat. Ann. § 43-2139 (Repl. 1977), requiring the judge to call the jury into open court to answer any question the jury may have, are mandatory. *Andrews* v. *State*, 251 Ark. 279, 472 S.W.2d 86 (1971).

### 6. Other points

We find no error in and no need to discuss the appellant's other points having to do with death qualification of jurors, sequestered voir dire, and the prosecutor's closing argument.

Reversed.