Robert Lee WILLIFORD, Jr. *v.* STATE of Arkansas

CR 89-60                                777 S.W.2d 839

Supreme Court of Arkansas
Opinion delivered October 16, 1989

*William R. Wisely*, Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Tim Humphries*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Robert Lee Williford, Jr., was convicted of murder in the first degree, attempted murder in the first degree (four counts), theft of property over $200.00, and arson. He was sentenced to a term of life imprisonment plus 196 years. From this judgment he appeals. For reversal, he contends that the trial court erred in refusing to allow a witness to testify under Ark. R. Evid. 804(b)(3). We disagree and affirm.

After having an argument with his girlfriend, Williford went to a residence, which he shared with others, on Woodlawn Street in Hot Springs, Arkansas, around 11:00 p.m. on August 2, 1988. Upon arrival, Williford discussed his "girlfriend" problem with Sue Gomez, his aunt, who apparently was unsympathetic. Williford and Shawnette Walker, Sue Gomez's niece, began drinking vodka and orange juice and watching television. Julie Martin, Gomez's daughter, and an owner of a half-interest in the house, and Bridgette Tharp, Martin's friend, returned home at approximately 11:45 p.m. Shortly thereafter, Sue Gomez and Miguel Gomez, her husband, went to bed. About 2:00 a.m., Martin and Tharp left to get something to eat. When they returned around 3:00 a.m., Williford and Walker were still watching television. According to Martin, Williford appeared to be intoxicated.

Williford then carried Walker, who had fallen asleep on the couch, to bed. A short time later, Williford awakened Walker and asked her if he could use her car. She agreed. When Martin and Tharp started to go to bed around 3:45 a.m. Williford asked them if they were going to sleep, and Martin said, "Yes." At 4:30 a.m., Martin woke up after hearing what sounded like an explosion. Tharp opened the bedroom door and encountered flames. Tharp and Martin exited by way of the garage door, went next door to a neighbor's house, and called the fire department.

Miguel Gomez testified that he woke up when the "fire ran the door to my bedroom" and also that Sue Gomez woke him up and told him, "Michael, Michael, the house is burned." Walker testified that Sue Gomez woke her up screaming, "The house is on fire." Walker escaped through the back door. The fire department arrived at 5:00 a.m. After learning that people were still inside, a fireman went in and found Sue Gomez lying in the dining room by the back door and Miguel Gomez lying inside the front door. They were rushed to the hospital.

Sue Gomez received burns to seventy percent of her body and died two weeks later from resulting complications. Miguel Gomez and Shawnette Walker were also burned but they survived. Julie Martin and Bridgette Tharp escaped unharmed.

At about 5:00 a.m., a Garland County deputy sheriff spotted a black Camaro speeding down Highway 7. He pursued the car for several miles. At one point, the Camaro collided with the

deputy's car. The deputy attempted to catch the car but could not. When returning to town, he spotted the Camaro parked by a building. The car was towed to the Hot Springs police station and, a short time later, Williford was apprehended. A smoke detector, a fire alarm, and a burglar alarm were found in the car, which was registered to Sue Gomez.

After signing a rights waiver form, Williford made a confession to the police about 2:00 p.m. He stated that he had gotten into an argument with his girlfriend on the evening prior to the fire and had discussed this matter with his aunt, Sue Gomez, who was unsympathetic. In addition, he confessed that in the early morning hours of August 3, 1988, he removed the smoke detectors and fire alarms from the house and put them in the Camaro, poured gasoline in the hallway and living room, lighted the gasoline with a Bic lighter, exited the house, and drove away.

Arval Sanders, the Fire Marshall for Hot Springs, testified that the fire was an arson fire started with gasoline. He stated that the points of origin of the fire were the hallway area leading to the bedrooms, which was lighted first, and an area near the front door. He also testified that usually in a situation where gasoline is used, the person lighting the fire has a good possibility of getting burned. However, he asserted that this was not the case here since there was a return air duct in the house, which would prevent the fire from receiving oxygen. He also testified that unless one is a fire specialist or a professional arsonist, he would have a "fifty-fifty" chance of being burned if he started a fire of this type. Sanders conceded that more than one person could have started the fire.

At trial, Williford took the stand and recanted the confession he gave on the day of the fire. He testified that at around 3:00 to 3:30 a.m. on August 3, 1988, Sue Gomez came into the front room of the house and advised him of her desire to collect insurance proceeds from burning the house in the same way she had previously collected insurance proceeds on another house she had burned on Spencer Street. She then asked him to take part in burning the house. Specifically, Williford testified that she asked him to get rid of all the smoke detectors and burglar alarms and anything personal he wanted to keep. He testified that he took a smoke detector from the wall and helped Sue Gomez unhook the

burglar alarm. However, he denied that he started the fire. He asserted that he only admitted starting the fire to "cover up" for her, since she had a police record and had recent problems with the authorities over her fortune-telling business. He also stated that when he confessed he did not know anyone had been killed. Williford himself has a prior record, having pleaded guilty to two counts of burglary in 1987.

After Williford's testimony, the defense counsel proffered testimony by Philip Parmley, a convicted felon, that on July 4, 1988, Sue Gomez had called him on the telephone and told him that she wanted to discuss something with him. They then met at Wittington Park later that night. Sue Gomez drove up in what Parmley believed to be a black Camaro.

Parmley alleged that Gomez told him that she had talked to a female acquaintance of his who had told Gomez that he might be interested in making some money. Gomez informed Parmley that she was in desperate need of money and offered him $1,000.00 to burn down a house in an arson for profit scheme. According to Parmley, he declined the offer. At that point, Gomez stated, "Well, it really wasn't something I was planning on doing. It was just a thought." She then departed.

After this proffer, defense counsel moved for the court to allow Parmley to testify concerning the conversation with Gomez under Ark. R. Evid. 804(b)(3). Over defendant's objection, the trial court denied the motion, finding that the corroborating circumstances did not clearly indicate the trustworthiness of Gomez's statement and, therefore, the statement was inadmissible under Rule 804(b)(3).

For reversal, Williford contends that the trial court erred in refusing to allow Parmley to testify concerning the statement by Gomez pursuant to Ark. R. Evid. 804(b)(3).

Ark. R. Evid. 804(b) provides in pertinent part as follows:

Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's

pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability or to render invalid a claim by him against another or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. . . .

For a statement tending to expose the declarant to criminal liability and offered to exculpate the accused to be admissible under Rule 804(b)(3), the proponent must show (1) that the declarant is unavailable, (2) that the statement was at the time of its making "so far tended to subject him to criminal liability" that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement.

Absent an abuse of discretion, this court will not reverse a trial court's ruling on the admissibility of a statement against penal interest. *See Welch* v. *State*, 269 Ark. 208, 599 S.W.2d 717, *cert. denied*, 449 U.S. 996 (1980).

In the case at bar the declarant, Sue Gomez, died in the fire. In addition, her statement to Parmley that she would give him $1,000.00 if he participated in the arson for profit scheme "so far tended to subject her to criminal liability" if the house, in fact, burned that a reasonable person in the declarant's position would not have made the statement unless she believed it to be true. For the purposes of Rule 804(b)(3), it is not material that the statement was made before the house was burned. *See* 4 D. Louisell & C. Mueller, *Federal Evidence* § 489 (1980). *See also State* v. *Parrish*, 205 Kan. 178, 468 P.2d 143 (1970). In *Parrish*, the Supreme Court of Kansas held that a statement by the declarant indicating that he planned to commit arson was a statement against interest.

The sole issue remaining before us is whether Williford presented corroborating circumstances to the trial court that clearly indicated the trustworthiness of the declarant's state-

ment. Some circumstances do corroborate the trustworthiness of declarant Sue Gomez's statement of July 4, 1988, to Parmley concerning the arson for profit scheme:

(1) Testimony by appellant and Julie Martin that the declarant, Sue Gomez, had suffered a fire loss in 1987 at a house located on Spencer Street in Hot Springs and testimony by appellant that the declarant asked Williford to burn the house on Spencer Street, as well as the house on Woodlawn Street, in arson for profit schemes corroborates her statement to Parmley that she would give him $1,000.00 to participate in an arson for profit scheme.

(2) Testimony by the Fire Marshall that the fire was an arson fire started with gasoline, that more than one person could have started the fire, and that whoever started the fire would have only a "fifty-fifty" chance of escaping injury due to the nature of the fire; testimony by the State Medical Examiner that the declarant, Sue Gomez, had burns over seventy percent of her body; and testimony that the other residents of the house did not sustain severe injury somewhat increases the likelihood that Sue Gomez asked Parmley to burn down a house in an arson for profit scheme.

(3) The proposed testimony by Parmley that Sue Gomez drove up on the night of July 4, 1988, in what he believed to be a black Camaro, coupled with the evidence that a black Camaro was registered to Sue Gomez, corroborates the trustworthiness of her statement.

(4) The fact that Parmley identified at trial a photograph of Sue Gomez as the person he talked to on July 4, 1988, also corroborates the trustworthiness of her statement.

Other circumstances, however, indicate that the statement is untrustworthy:

(1) Testimony of the Fire Marshall that there was a return air duct in the house, which would prevent the fire from receiving oxygen, and that, therefore, the person starting the fire did not have a good possibility of getting burned diminishes the corroborative strength of his testimony that whoever started the fire would have only a "fifty-fifty" chance of escaping injury due to the nature of the fire.

(2) Testimony concerning the circumstances and events prior, during, and subsequent to the fire further contradicts the trustworthiness of the statement by Sue Gomez. Julie Martin testified that Sue Gomez went to bed around 12:00 to 1:00 a.m. on the morning of the fire. It is undisputed that Williford did not go to bed prior to the fire, but stayed up drinking vodka and orange juice, and remained awake until all of the occupants had gone to bed. He left the house shortly before the fire started; approximately thirty minutes after the house caught on fire, he was involved in a high speed car chase with a deputy sheriff. Upon searching the car he was driving, the police found a smoke detector, fire alarm, and burglar alarm taken from the house.

Miguel Gomez testified he woke up when "fire ran the door to my bedroom" and that Sue Gomez woke him up and stated, "Michael, Michael, the house is burned." The Fire Marshall testified that the hallway area leading to the bedrooms was lighted first and the area near the front door lighted second.

If Gomez started the fire, she would have had to have lighted the gasoline in the hallway by her bedroom, gone to the area near the front door of the house and lighted the gasoline there, run back through the flames, and then awakened Gomez — a highly unlikely sequence of events.

Accordingly, it is improbable that Sue Gomez was involved with starting or planning the fire as suggested in the proposed testimony.

(3) Williford's confession that he started the fire negates the trustworthiness of the declarant's statement. The accuracy of the details given by Williford in his confession concerning how and where the fire was started make it likely that he started the fire, not Sue Gomez. His explanation at trial for confessing to the crime, i.e., that he was "covering up" for Gomez because she had a prior record and had recent problems with the authorities over her fortune-telling business is not convincing.

In conclusion, the trial court was correct in determining that the corroborating circumstances did not clearly indicate the trustworthiness of the declarant's statement and did not abuse its discretion in excluding the testimony of Philip Parmley.

Although the State's brief does not indicate compliance with

Ark. Sup. Ct. R. 11(f), to save the time which would be required to have the case rebriefed by the attorney general, we have examined the record and found no meritorious objections decided adversely to Williford and no prejudicial error.

Affirmed.

GLAZE, J., concurs.

TOM GLAZE Justice, concurring. I agree in the result reached by the majority, but in construing Ark. R. Evid. 804(b)(3), I would employ the same guidelines adopted by the Eighth Circuit Court of Appeals in *United States* v. *Riley*, 657 F.2d 1377 (8th Cir. 1981). *See also United States* v. *Rasmussen*, 790 F.2d 55 (8th Cir. 1986).