Raymond SANDERS v. STATE of Arkansas

CR 90-223                                    805 S.W.2d 953

Supreme Court of Arkansas
Opinion delivered March 25, 1991
[Rehearing denied April 22, 1991.*]

*Hays, Glaze, and Brown, JJ. would grant rehearing.

114

*Phyllis J. Lemons* and *Arthur L. Allen*, for appellant.

*Mary B. Stallcup*, Att'y Gen., by: *Frank J. Wills III*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Raymond Sanders, was convicted of capital murder by a Hot Spring County jury on March 17, 1990. He appeals from the judgment sentencing him to life imprisonment in the Arkansas Department of Correction. He raises five issues as grounds for reversal: there was not sufficient evidence of the underlying felony to support a capital murder conviction; the trial court erred in denying his motion for continuance, in denying his motion to suppress in-custody statements, in refusing to admit testimony as an exception to the hearsay rule, and in refusing to give a tendered jury instruction. We find the arguments regarding the in-custody statements and the tendered jury instruction meritorious, and reverse the judgment of conviction. We discuss appellant's other asserted issues only to the extent necessary to avoid error if the case is retried.

I.

### THE TRIAL COURT ERRED IN THAT THERE WAS INSUFFICIENT EVIDENCE OF ROBBERY AS THE UNDERLYING FELONY TO SUPPORT A CAPITAL MURDER CONVICTION.

Appellant did not move for a directed verdict at the close of the case. Ark. R. Crim. P. 36.21(b) provides that a failure to move for a directed verdict at both the conclusion of the evidence presented by the prosecution and at the close of the case,

constitutes a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict. Appellant, by failing to move for a directed verdict at the close of the case, waived any challenge to the sufficiency of the evidence. *See also Hayes* v. *State*, 298 Ark. 356, 767 S.W.2d 525 (1989).

## II.

### THE TRIAL COURT ERRED WHEN IT REFUSED TO ADMIT INTO EVIDENCE PROFFERED TESTIMONY OF KENNETH TRAYLOR AS AN EXCEPTION TO THE HEARSAY RULE.

Appellant sought to admit into evidence, as an exception to the hearsay rule under Rule 804(b)(3), statements his co-defendant, Byron Hopes, allegedly made to Kenneth Traylor sometime in August 1989. The trial judge in chambers heard the testimony of Mr. Traylor, which was to the effect that Mr. Hopes sometime around August of 1989 approached him about robbing the same bootlegging operation that was the target of the robbery involved in this murder trial. The court also heard the testimony of Byron Hopes in chambers; Mr. Hopes, in exercising his fifth amendment privileges, testified only for the purpose of the hearing and only for the limited question of whether or not he ever had a conversation with Mr. Traylor concerning robbing the deceased. Mr. Hopes denied having ever had such a conversation with Mr. Traylor. The court ruled that portion of Mr. Traylor's testimony inadmissible, stating that "Number 1, the witness is not unavailable; Number 2, if the witness were unavailable, the testimony offered by Kenneth Traylor is not sufficiently reliable to allow it as an exception to the hearsay rule."

The relevant portion of Ark. R. Evid. 804(b) provides the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and

offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

For the alleged August 1989 statement of Byron Hopes, the declarant, to be admissible through the testimony of Kenneth Traylor it must be shown that: 1) the declarant is unavailable; 2) the statement at the time of its making "so far tended to subject him to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and 3) corroborating circumstances clearly indicate the trustworthiness of the statement. *See United States* v. *Riley*, 657 F.2d 1377 (1981); *Williford* v. *State*, 300 Ark. 151, 777S.W.2d 839 (1989). Absent an abuse of discretion, this court will not reverse a trial court's ruling on the admissibility of a statement against penal interest. *Welch* v. *State*, 269 Ark. 208, 599 S.W.2d 717, *cert. denied*, 449 U.S. 996 (1980).

The court when making its ruling on this matter said:

[E]ven if Mr. Hopes were unavailable as a witness, that that testimony would not be admissible for the reason that it is too remote in time; for the reason that it is not sufficiently established as reliable; for the reason that it is testimony offered by Kenneth Traylor, who is a penitentiary inmate doing sixty years, having been recently convicted in this court as an habitual offender and who had three or more prior offenses which were convictions from this court, all of which the court takes judicial notice.

Whether Byron Hopes was unavailable for purposes of considering the admissibility of his statement, or whether it was "against his penal interest," clearly the trial court found the corroborating circumstances did not indicate the requisite trustworthiness of the statement. Based on the foregoing, we cannot say the trial court abused its discretion in now allowing the statement as an 804(b)(3) exception to the hearsay rule.

## III.

### THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS APPELLANT'S IN-CUSTODY STATEMENTS.

Investigators from the Hot Spring County Sheriff's Department stopped appellant and his co-defendant, Byron Hopes, near the scene of the shooting on the afternoon of December 31, 1989. One of the investigators recognized appellant as the subject of an outstanding arrest warrant for felon in possession of a firearm. Appellant was arrested on the outstanding warrant and Mr. Hopes was arrested for drug paraphernalia and having alcohol in the car. Both men were taken to the Hot Springs County Sheriff's Office where they were jailed. That same afternoon appellant was taken to Investigator Henry Efird's office, where he signed a statement of rights and gave a statement at 4:16 p.m. On January 2, 1990, at 6:59 p.m. appellant signed another statement of rights, and at 9:00 p.m. gave another statement.

Appellant in the December 31, 1989 statement said, "get the Sheriff and the Chief in here man and I want to tell you something man really heavy man." He continued by saying that Mr. Hopes had done something serious. He also mentioned something about a murder weapon. When Investigator Efird questioned appellant regarding the murder and the gun, appellant replied, "[m]an, I want my New Years man before I do all this." Investigator Efird replied, "Raymond if you can't help me man I'm not fixing to call the Sheriff in here." During the course of the interview, Sheriff Cook joined them. Appellant told Investigator Efird and Sheriff Cook that Byron Hopes told him he killed somebody.

The following is a portion of the interview:

Cook: Where is that gun at?

Sanders: _____ didn't say anything about a New Years, will you try to let me have a New Years?

Cook: Well, I don't know what I can do right now.

Sanders: I bet I'm going to have to be locked up.

Cook: I don't know, where's the damn gun. If we could find that gun we might do something about —

. . . .

Sanders:    I know where he lives man, I, you know, I'm going to the pen the 12th man for 20 or 30 years.

Cook:    I don't know about that. I doubt that. We can solve something, that he's hurt somebody it would be to your advantage, I'll guarantee it.

Sanders:    Can I have my New Years?

Cook:    We'll talk to you about that.

In the remainder of this statement appellant relates information about his alleged conversation with Mr. Hopes.

The interview conducted January 2, 1990, began with Investigator Efird telling appellant they were going to talk "about a homicide involving Mr. Byron Hopes and yourself. The killing of a Frederick LaSalle." The following is a portion of that interview:

Efird:    Now, you told me that you wanted a New Year's furlough.

Sanders:    Right, I did.

Efird:    And that if we would give you a New Year's furlough, you could put us on to where a murder weapon was?

Sanders:    Right where I believed —

Efird:    Where you believed the murder weapon was?

Sanders:    Right.

Appellant claims the two statements were not knowingly, voluntarily, and intelligently made, and, therefore, should have been suppressed. He contends that when he made the first statement he was under the influence of alcohol and drugs, and that Sheriff Cook and Investigator Efird induced him into making it by promising him his New Year's Eve in exchange for the information.

Custodial statements are presumed to be involuntary. *Moore* v. *State*, 303 Ark. 1, 791 S.W.2d 698 (1990). On appeal the burden is on the state to show that the confession was made voluntarily, freely, and understandingly, without hope of reward or fear of punishment. *Jackson* v. *State*, 284 Ark. 478, 683 S.W.2d 606 (1985). A statement induced by fear or hope of reward is not voluntary. *Davis* v. *State*, 275 Ark. 264, 630 S.W.2d 1 (1982). In determining whether a custodial statement is voluntary, we make an independent review of the totality of the circumstances and will reverse only if the trial court's findings are clearly against the preponderance of the evidence. *Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988). The totality is subdivided into two main components, first, the statement of the officer and second, the vulnerability of the defendant. *Davis, supra.*

Looking at the statements of the officers, it appears appellant gave his first statement in anticipation of being rewarded with a "New Year's furlough." Officer Efird in the second statement even referred to that part of the first interview involving a furlough in exchange for information about where the murder weapon could be found. Appellant's first statement appears to have been induced by a hope of reward. Therefore, it was not voluntary and should have been suppressed.

## IV.

### THE TRIAL COURT ERRED IN REFUSING APPELLANT'S TENDERED JURY INSTRUCTION AMCI 1502 WHICH SET OUT THE FELONY MURDER PROVISION OF THE FIRST DEGREE MURDER STATUTE.

Appellant and Byron Hopes on January 3, 1990, were charged with capital murder, a violation of Ark. Code Ann. § 5-10-101 (Supp. 1989), in that on December 31, 1989, they did unlawfully commit aggravated robbery, and in the course of and in furtherance of said felony, or in immediate flight therefrom, they caused the death of a person under circumstances manifesting extreme indifference to the value of human life; the defendants allegedly shot Frederick M. LaSalle, Jr. at least four times, beat and killed him for the purpose of stealing money, whiskey, and beer, and thereafter did commit the theft of property. While

the court at trial instructed the jury on both capital murder and first degree murder, it refused to give appellant's tendered first degree murder instruction. The following, Court's Instructions Nos. 16, 19, and 20, are the instructions which were given on capital murder and first degree murder, respectively:

### COURT'S INSTRUCTION NO. 16

### (AMCI 1501)

Raymond C. Sanders is charged with the offense of Capital Murder. To sustain this charge, the State must prove the following things beyond a reasonable doubt.

First: That Raymond C. Sanders acting alone or with one or more persons committed the crime of robbery, and;

Second: That in the course of, and in furtherance of that crime, Raymond C. Sanders or a person acting with him, caused the death of Frederick LaSalle under circumstances manifesting an extreme indifference to the value of human life.

### COURT'S INSTRUCTION NO. 19

### (AMCI 302)

If you have a reasonable doubt of the defendant's guilt on the charge of Capital Murder, you will then consider the charge of Murder in the First Degree.

### COURT'S INSTRUCTION NO. 20

### (AMCI 1502)

To sustain this charge, the State must prove beyond a reasonable doubt:

That Raymond C. Sanders or an accomplice caused the death of Frederick LaSalle with the premeditated and deliberated purpose of doing so.

The following is appellant's proffered instructions regarding first degree murder:

## DEFENDANT'S REQUESTED INSTRUCTION
## NO. 1

### (AMCI 1502)

Raymond Sanders is charged with the offense of murder in the first degree. To sustain this charge, the State must prove the following things beyond a reasonable doubt:

First: That Raymond Sanders acting alone or with one or more persons committed or attempted to commit robbery; and

Second: That in the course of and in furtherance of that crime or attempt or in immediate flight therefrom, Raymond Sanders or a person acting with him caused the death of Frederick LaSalle under circumstances manifesting extreme indifference to the value of human life.

Appellant argues the trial court erred in refusing to give his requested instruction, AMCI 1502, because he was never charged with capital murder under the premeditation and deliberation provision but only under the felony provision. He contends the appropriate lesser included offense to capital felony murder is first degree felony murder. We agree.

When there is a rational basis for a verdict acquitting a defendant of the offense charged and convicting him of the included offense, an instruction on a lesser included offense should be given, and it is reversible error to fail to give such instruction when warranted. *Moore* v. *State*, 280 Ark. 222, 656 S.W.2d 698 (1983).

This court, in *Hill* v. *State*, 303 Ark. 462, 798 S.W.2d 65 (1990), was faced with a similar situation. The appellant in *Hill* was charged with violations of sections 5-10-101 (capital felony murder); 5-12-102 (Supp. 1989) (robbery); and 5-36-103 (Supp. 1989) (theft of property). Prior to the submission of the case to the jury, the appellant tendered a jury instruction on. felony murder in the first degree as a lesser included offense of capital felony murder. The proffered instruction tracked the provisions of Ark. Code Ann. § 5-10-102(a)(1) (Supp. 1989), the first degree felony murder statute. However, the instruction on first

degree murder which the court gave permitted the jury to convict the appellant of first-degree murder upon a finding of "premeditation and deliberation," and followed Ark. Code Ann. § 5-10-102(a)(2) (1987)[1] The appellant was convicted of first-degree murder, acquitted of the charge of robbery, and found guilty of misdemeanor theft of property. We found the proper instruction was refused and stated:

> Though Ark. Code Ann. § 5-10-101 and § 5-10-102(1) admittedly overlap, this circumstance does not render either statute constitutionally suspect in its application. *Penn* v. *State*, 284 Ark. 234, 681 S.W.2d 304 (1984); *Wilson* v. *State*, 271 Ark. 682, 611 S.W.2d 739 (1981). Indeed, we have said that when capital felony murder is charged under Ark. Code Ann. § 5-10-101, first-degree murder is a "lesser included offense" because the same evidence used to prove the former of necessity proves the latter. Therefore, an instruction on first-degree murder is required. *Rhodes* v. *State*, 290 Ark. 60, 716 S.W.2d 758 (1986). The proper instruction in this instance would have been the first degree felony murder instruction as authorized under the provisions of Ark. Code Ann. § 5-10-102(1) — the very form of instruction tendered by the appellant and refused by the court.

*Hill*, 303 Ark. at 468-69, 798 S.W.2d at 69. Because the appellant was convicted of first degree murder based on a finding of a premeditated and deliberated purpose, a crime with which he had not been charged, we found the omission of the proper instruction to have been prejudicial and violative of his due process rights.

In the case at bar, as in *Hill*, *supra*, the proper instruction, appellant's tendered instruction tracking section 5-10-102(a)(1), was refused. That being determined, the next question to be addressed is whether the omission was prejudicial and violative of appellant's due process rights. *Evans* v. *State*, 287 Ark. 136, 697 S.W.2d 879 (1985); *Conley* v. *State*, 270 Ark. 886, 607 S.W.2d 328 (1980).

---

[1] Ark. Code Ann. § 5-10-102(a)(2) was amended by Act 856 of 1989 to eliminate any "premeditated and deliberated" purpose.

As stated before, capital murder, section 5-10-101(a)(1), and first degree murder, section 5-10-102(a)(1), are proven by the same evidence, *Hill, supra*, and where the accused is charged with homicide in the course of committing one of the felonies named in section 5-10-101(a)(1), the judge must also instruct on first degree murder, section 5-10-102(a)(1). *Rhodes v. State*, 290 Ark. 60, 716 S.W.2d 758(1986). In addition, we have held in cases where the statues overlap and both instructions are required, the jury may refuse consideration of both the death penalty and life without parole by returning a guilty verdict as to the charge of murder in the first degree. *Clines v. State*, 280 Ark. 77, 656 S.W.2d 684 (1983); *Wilson v. State*, 271 Ark. 682, 611 S.W.2d 739 (1981). The trial court, by refusing to give the tendered instructions, took this option away from the jury. Although the jury convicted appellant of capital murder, it chose the lesser of the two possible sentences. Because both capital murder and first degree murder in this situation require proof of the same elements, there is a rational basis for a verdict acquitting appellant of capital murder and convicting him of first degree murder; had the third option been available to the jury, the possibility exists that it would have convicted appellant of first degree murder.

Based on the foregoing, we believe appellant was prejudiced by the omission of the proper instruction. His judgment of conviction must, therefore, be reversed and the case be remanded for a new trial.

HAYS, GLAZE, and BROWN, JJ., concur in part; dissent in part.

STEELE HAYS, Justice, concurring in part, dissenting in part. I agree with the majority with respect to the first degree murder instruction but I do not agree that appellant's statements should have been suppressed. In determining whether an in-custodial confession has been induced by a promise of reward, we look to the totality of the circumstances. *Davis v. State*, 275 Ark. 264, 630 S.W.2d 21 (1982). Furthermore, it is necessary that the accused rely on such promise, *State v. Hall*, 586 P.2d 1266 (1978); *State v. Morris*, 574 P.2d 350 (Ore. App. 1978), and it must be the police, rather than the accused, that propose the reward. *State v. Harwick*, 552 P.2d 987 (Kan. 1976).

Applying those tenets, the proof in my estimation fails to warrant the suppression of appellant's statement. First, it was appellant who instigated the interview with the officers; second, he indicated at the outset that he wanted to give the officers some "heavy" information about the murder; third, his statement came, not at the end of a lengthy interrogation [*see*, e.g., *Brown* v. *State*, 198 Ark. 920, 132 S.W.2d 15 (1939)], but after some ninety minutes; fourth, there is no proof of an express or implied promise that a furlough would be given if he made a statement, his motion to suppress contains no such allegation nor did he himself make that contention to the trial court. Only two witnesses, Officer Henry Efird and Sheriff Doyle Cook, testified at the suppression hearing and both categorically denied that any promise was made to the appellant:

(Officer Efird):

Q.   Now, Raymond was expecting that if he talked to you, you were going to work some kind of deal where he could get out of jail for New Years, wasn't he?

A.   *No, sir. I never did lead Mr. Sanders to believe that.* [My emphasis.]

(Sheriff Cook):

Q.   Do you remember whether you made any promises to the defendant that in exchange for information, you would do something for him or give him something?

A.   *No, sir, I didn't make no promises.*

Q.   Was he led to believe by you that if he were to give you information or a statement or anything of that effect, you would do something for him. For example, let him have New Year's Day off?

A.   No, sir. I wasn't in no position to make any promises.

Q.   Did you make a promise of any kind, Sheriff?

A.   *No, sir.* [My emphasis.]

Since appellant did not testify at the suppression hearing, that testimony stands unrefuted and thus the requirement that the accused establish that he relied on an express or implied

promise of reward is wholly lacking; fifth, it was the appellant who solicited the furlough, rather than the officers proposing it as an inducement; sixth, the appellant gave the statement after having had his *Miranda* rights fully explained, which he acknowledged verbally and in writing; seventh, appellant was no stranger to police procedures, having had considerable experience with law enforcement. *Wright* v. *State*, 267 Ark. 264, 590 S.W.2d 15 (1979).

The trial court heard the evidence as to the voluntariness of the appellant's in-custodial statement and observed the demeanor of the only witnesses who testified. I suggest his finding was not clearly erroneous and should not be disturbed. *Davis* v. *State, supra* and *Harvey* v. *State*, 272 Ark. 19, 611 S.W.2d 762 (1981).

GLAZE and BROWN, JJ. join.