Alvin L. HALL *v.* STATE of Arkansas

CR 89-31                                                772 S.W.2d 317

Supreme Court of Arkansas
Opinion delivered June 19, 1989

210

*William R. Simpson, Jr.*, Public Defender, *Didi Harrison*, Deputy Public Defender, by: *Thomas B. Devine III*, Deputy

Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was convicted of first degree murder, theft by receiving, and fleeing. The theft by receiving conviction was merged into the murder conviction, and therefore, appellant was sentenced only for first degree murder and fleeing. The appellant's primary point on appeal is that the only crime he can be convicted of is second degree murder. We affirm the judgments of conviction as set out by the trial court. Since the sufficiency of the evidence is questioned, we set out the evidence in detail.

Charles Thomas' car was stolen on March 16, 1988. On March 21, 1988, policeman Stan Harmon was driving his marked patrol car when he spotted Thomas' car being driven on 13th Street at the intersection of Woodrow in Little Rock. The officer knew that the car had been seen at the scene of several crimes in the past few days. He started to trail the stolen car. The stolen car turned south onto Johnson Street, started accelerating, turned west onto 14th Street, turned north on Brown, turned west on 12th Street, and by this time was going at a fast rate of speed. The policeman was in close pursuit using his flashing lights and siren. The stolen car continued west on 12th Street at a high rate of speed. There is a traffic light at the intersection of 12th and Pine Streets. The light was red on the 12th Street side, and cars were consequently backed up from the light. In an effort to get around those cars, the stolen car swerved into the oncoming lanes. At that moment the light turned green on 12th Street, and the stolen car was faced with oncoming traffic. The stolen car swerved left going 78 miles per hour into a parking lot, hit the curb, struck a concrete pillar, flew 63 feet into the air, landed, hit a parked car, and then a pedestrian, Marilyn York, who had just attended a wedding at a nearby church. The pedestrian was thrown a distance of 52 feet and instantly killed. The stolen car went 72 feet past the parked car and crashed into a nearby building. The appellant, the only person in the stolen car, got out and started to flee on foot. Patrolman Harmon chased him, and caught and arrested him two blocks away.

As set out, appellant was in possession of a stolen car.

Consequently, he was charged with theft by receiving. That charge and subsequent conviction served as the underlying felony for the first degree murder conviction. Appellant's first argument is that theft by receiving is not a felony which will support a first degree murder conviction pursuant to Ark. Code Ann. § 5-10-102(a)(1) (1987). That statute provides that a person commits murder in the first degree if "he commits . . . a felony, and in the course of and in the furtherance of the felony or in immediate flight therefrom, he . . . causes the death of any person under circumstances manifesting extreme indifference to the value of human life."

The statute plainly states that first degree murder is committed when one commits *a felony* and in the course of and furtherance of that felony or in flight therefrom causes death in the specified manner. It does not provide that only specified felonies qualify. Additionally, the commentary provides:

> Section 5-10-102(a)(1) carries forward the felony murder doctrine. The Code provision differs from earlier law in that liability arises for a killing in the course of and in furtherance of *any* felony or in flight therefrom. The expansive effect of this change is circumscribed somewhat by the requirement that the death occur 'under circumstances manifesting extreme indifference to the value of human life.' Thus, the inadvertent killing during the course of a nonviolent felony does not constitute first degree murder . . . .

Appellant latches onto the final sentence of the commentary and takes it out of context to argue that theft by receiving cannot qualify as an underlying felony. In response, we note that the comment clearly tracks the statute and provides for guilt for killing in the course of, furtherance of, or flight from any felony. The word "any" is italicized. The commentary notes that the code may not be greatly expansive since the death must occur "under circumstances manifesting extreme indifference to the value of human life." Finally, it provides: "Thus, the inadvertent killing during the course of a nonviolent felony does not constitute first degree murder." Since the final sentence begins with "thus," it hinges on the sentence immediately before it. The commentary is saying that since the death must be caused under circumstances

manifesting extreme indifference to the value of human life, ordinarily an inadvertent killing during the course of a nonviolent felony will not constitute first degree murder, since it will not have that necessary component. Such a situation would not normally involve circumstances manifesting extreme indifference to the value of human life. However, the only limiting phrase in the commentary, and in the statute itself, is that the death must occur under circumstances manifesting extreme indifference to the value of human life. There is no requirement that the underlying felony be a violent one. Accordingly, appellant's argument is without merit.

■ Appellant's next argument is that there was not sufficient evidence to prove that he was in the course of, in furtherance of, or in flight from a felony since the theft was five (5) days earlier. This argument is also without merit. Appellant was charged and convicted of theft by receiving. In *State* v. *Reeves*, 264 Ark. 622, 574 S.W.2d 647 (1978), *cert. den.*, 441 U.S. 964 (1979), we held that retaining possession of a stolen automobile is a continuing course of conduct, or a continuing offense. Conjointly, Ark. Code Ann. § 5-36-106(a) (1987) provides that a person commits theft by receiving if he retains stolen property, knowing it was stolen, or having good reason to believe it was stolen. Thus, theft by receiving is a continuing offense, and there was substantial evidence from which the jury could have found that the appellant retained the stolen property, knowing it to be stolen, or having good reason to believe it was stolen.

■■ Appellant took the stand to deny that he knew the car was stolen; he maintained that he borrowed it from someone, and therefore, he argues, there was no substantial evidence to sustain his conviction for theft by receiving. However, an accused's unexplained possession or control of recently stolen property is prima facie evidence of his guilt of theft by receiving. *Lane* v. *State*, 288 Ark. 175, 702 S.W.2d 806 (1986). In *Core* v. *State*, 265 Ark. 409, 578 S.W.2d 581 (1979), we wrote that the unexplained possession or control of recently stolen property gives rise to a presumption that an accused knows or believes that the property was stolen. *See* Ark. Code Ann. § 5-36-106(c) (1987). Further, the reasonableness of the appellant's explanation was a matter for the jury to assess, and the jurors were free to accept such part of his testimony they believed and free to reject

that part they thought to be false. In short, there was sufficient evidence to support the conviction for theft by receiving and, accordingly, to support the underlying felony for first degree murder.

He next attacks the sufficiency of the evidence to support the first degree murder conviction by contending that the victim's death did not occur "under circumstances manifesting extreme indifference to the value of human life." The evidence set out at the beginning of this opinion was sufficient for the jury to find that this element of the crime was proven.

Appellant next argues that he was only charged with and convicted of misdemeanor fleeing which, as a matter of law, could not serve as the underlying felony to first degree murder. His argument, in detail, is as follows. Under Ark. Code Ann. § 5-54-125(a) (1987), a person is guilty of the offense of fleeing if he "knows that his immediate arrest or detention is being attempted by a duly authorized law enforcement officer," and flees from that officer. Under section (c) of the statute, fleeing shall be considered a Class C misdemeanor, except in certain circumstances. Section (c)(3) provides that where personal injury occurs to any person as a direct result of the fleeing, the offense shall be a Class D felony. Count 3 of the information, which contains this charge, reads in pertinent part as follows:

> [C]harges Alvin Levelle Hall . . . with the crime of violating Ark. Stat. Ann. § 5-54-125 Fleeing, committed as follows, to-wit: The said defendant, in Pulaski County, Arkansas, on or about the 21st day of March, 1988, did unlawfully, flee from Officer Harmon, Little Rock Police, a duly authorized law enforcement officer, did unlawfully flee on foot, knowing that his immediate arrest or detention was being attempted after causing the death of Marilyn York, which was the direct result of the fleeing, against the peace and dignity of the State of Arkansas.

Appellant contends that under the wording of the information he was only charged with misdemeanor fleeing. He made a motion to reduce the charge at the end of the State's case and again at the close of all the evidence. The trial court denied both motions. The trial court ruled correctly.

■ The appellant was fleeing from the patrolman when he killed Marilyn York. After he wrecked the stolen car he continued to flee on foot. Appellant contends he was only charged with fleeing on foot and that no injury resulted from that flight. The argument is without merit as the count charged that the appellant "did unlawfully, flee from Officer Harmon, Little Rock, Police, a duly authorized law enforcement officer, did flee on foot . . . ." That language indicates that the charge relates to the entire act of fleeing. The additional reference to Marilyn York's death being the direct result of the appellant's fleeing makes it unmistakably clear that the charge involved a Class D felony.

Appellant's final point is that the conviction for fleeing should be merged into the conviction for first degree murder. This argument is also without merit.

■ The State did not rely on the appellant's fleeing conviction as the underlying felony to support his first degree murder conviction; instead, the State relied upon the conviction for theft by receiving as the underlying felony. In any event, in *Richie* v. *State*, 298 Ark. 358, 767 S.W.2d 522 (1989), we held that only one underlying felony must be merged into a capital murder conviction. The same reasoning applies to a first degree murder conviction.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. This court continues to expand the possibilities of conviction for multiple offenses growing out of one incident. The car the appellant was driving at the time of this fatal accident had been stolen five days earlier. For the purpose of this dissent, I will assume that the appellant stole the vehicle. However, he was charged with theft by receiving. Apparently that charge was easier to prove than it would have been to prove that he actually stole the vehicle. Nevertheless he was convicted of first degree murder in causing the death of a pedestrian with his automobile while fleeing from the commission of a felony. The information charged the appellant with fleeing, on foot, pursuant to Ark. Code Ann. § 5-54-125 (1987). Certainly "on foot" and "in an automobile" are two different modes of travel. Nowhere in the charge does it allege that the appellant was

fleeing after having committed a felony. The majority broadens the meaning of the statute to make it a continuing (day by day or hour by hour or perhaps minute by minute) felony to have in one's possession stolen property. Under this theory a person could, for the same offense, be sentenced to as many felonies as a prosecutor desired.

Five days before the fatal accident, the owner's vehicle had been stolen. The car was subsequently observed being driven by the appellant and he was then chased by a police vehicle. Apparently the reason the officer was chasing him was because the police knew the automobile had been stolen five days earlier. There is no doubt that the appellant was attempting to avoid arrest at the time this fatal accident occurred. No one suggests that the pursuing officers thought the car had just been stolen and that the appellant was fleeing the scene from where he had stolen the vehicle. It was only stolen one time and that was five days before this unfortunate tragedy. I can find no evidence in the record to indicate exactly when the appellant came into possession of this vehicle.

Theft by receiving is defined in Ark. Code Ann. § 5-36-106(a) (1987): "A person commits the offense of theft by receiving if he receives, retains, or disposes of stolen property of another person, knowing that it was stolen or having good reason to believe it was stolen." The appellant received or stole the property at only one time so far as the record discloses.

The crime of receiving stolen property is committed where and when the property is received. *Thompson v. State*, 207 Ark. 680, 182 S.W.2d 386 (1944). The majority relies on the case of *State v. Reeves*, 264 Ark. 622, 574 S.W.2d 647 (1978), for the proposition that the felony of theft by receiving continues as long as the person receiving the property has it in their possession. *Reeves* does not support that position. Reeves had challenged the statute of limitations for filing a charge of theft by receiving. The *Reeves* opinion stated: "The question before us then is: when does the statute of limitations begin to run on the crime of theft by receiving . . . ?" The opinion held: "[f]or the purposes of [Ark. Code Ann. § 5-36-106(a)], an offense is committed either when every element of the offense occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the

time the course of conduct or the defendant's complicity therein is terminated." Under the interpretation given by the majority, the statute of limitations would never run on offenses of theft by receiving as long as the defendant remained in possession of the property. If, for example, a person received a load of stolen brick and used it in the construction of a house, he could be prosecuted for theft by receiving as long as he retained possession of the house.

The important point, however, is that the *Reeves* decision that theft by receiving is a continuing offense surely was never intended to "bootstrap" the offense of manslaughter into a conviction for first degree murder when the appellant obviously had been in possession of the property for several days. Certainly it cannot reasonably be asserted that the death occurred in the course of, or in furtherance of, or in flight from the crime of theft by receiving.

No person alive could have imagined that a pedestrian almost a block from the traffic light would be killed when the appellant attempted to evade striking other automobiles by driving into a parking lot at a fast rate of speed. Certainly the facts of this situation do not fit the criteria of acts which constitute first degree murder. Fleeing "on foot" could not possibly have been the felony underlying the first degree murder count because the death had already occurred before the "flight" started. If, on the other hand, the underlying felony was the theft of the automobile or receipt of the stolen property, then it was not in "immediate flight therefrom" within the meaning of the law.

It is my opinion that the appellant could lawfully have been found guilty of manslaughter and theft of property (or theft by receiving) and fleeing. However, he should not have been convicted of first degree murder.