Cite as 2015 Ark. 479

# SUPREME COURT OF ARKANSAS

No. CR–15–12

| | | |
|---|---|---|
| JAMES E. HINTON III | | **Opinion Delivered** December 17, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-12-3560] |
| STATE OF ARKANSAS | | HONORABLE JAMES LEON |
| | APPELLEE | JOHNSON, JUDGE |
| | | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On September 22, 2014, a Pulaski County jury found appellant, James E. Hinton III, guilty of aggravated robbery, theft of property, and possession of a defaced firearm. He was sentenced to ten, five, and five years' imprisonment, respectively, with the sentences to run concurrently. Additionally, Hinton was charged as a habitual offender, and each conviction was enhanced by five years pursuant to Ark. Code Ann. § 16-90-120. Accordingly, Hinton was sentenced to a total of fifteen years' imprisonment.

From his convictions, Hinton filed his timely notice of appeal. The court of appeals certified Hinton's appeal to this court. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(b)(1),(5), and (6) (2015). Hinton presents two points on appeal: (1) the circuit court erred in denying his motion for directed verdict regarding the charge of Class B felony theft of property because the State failed to introduce evidence that Hinton obtained the property by threat of serious physical injury; and (2) Hinton's sentence is illegal because the firearm-enhancement statute, Ark. Code Ann. § 16-90-120, cannot be employed when

SLIP OPINION

the underlying felony necessarily involves possession of a firearm.

A summary of the facts is as follows. Hinton arranged to buy a laptop computer from a college student. While armed with a pistol, Hinton and his accomplice arrived to purchase the laptop, then without paying for it, grabbed the laptop and took off. Immediately after the laptop was grabbed from the seller, law enforcement was notified. A foot chase ensued, Hinton was apprehended, and the laptop and firearm were recovered. The jury convicted Hinton as set forth above, and this appeal followed.

*Points on Appeal*

I. *Sufficiency of the Evidence*

For his first point on appeal, Hinton asserts that the circuit court erred in denying his motion for directed verdict regarding the charge of Class B felony theft of property because the State failed introduce evidence that Hinton obtained the property by threat of serious physical injury.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Whitt v. State*, 365 Ark. 580, 232 S.W.3d 459 (2006). When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Gillard v. State*, 366 Ark. 217, 234 S.W.3d 310 (2006). We will affirm a judgment of conviction if substantial evidence exists to support it. *Id*. Substantial evidence is evidence which is of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Ricks v. State*, 316 Ark. 601, 873 S.W.2d 808

SLIP OPINION

(1994). We need consider only that testimony which supports the verdict of guilty. *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Finally, the credibility of witnesses is an issue for the jury and not the court. *Burley v. State*, 348 Ark. 422, 73 S.W.3d 600 (2002). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* In sum, we will affirm if there is substantial evidence to support the conviction. *Norton v. State*, 271 Ark. 451, 609 S.W.2d 1 (1980); *Lunon v. State*, 264 Ark. 188, 569 S.W.2d 663 (1978).

Additionally, when construing a statute, we must construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Thompson v. State*, 2014 Ark. 413, at 5, 464 S.W.3d 111, 114.

Hinton was convicted of theft of property. Ark. Code Ann. § 5-36-103 states in pertinent part:

> (a) A person commits theft of property if he or she knowingly:
>
> > (1) Takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property; or
> >
> > (2) Obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property.
>
> (b) Theft of property is a:
>
> > (1) Class B felony if:
> > . . .
> > > (B) The property is obtained by the threat of serious physical injury.

As used in Ark. Code Ann. § 5-36-103, "obtain" means "[i]n relation to property, to bring about a transfer or purported transfer of property or of an interest in the property,

whether to the actor or another person." Ark. Code Ann. § 5-36-101(7)(A).

Turning to the facts of Hinton's case, we must review the testimony presented. The facts related to this appeal stem from the sale of a laptop between private parties on the campus of the University of Arkansas at Little Rock ("UALR"). At trial, Samuel Shelton, a student at UALR, testified that, through the classified advertising website, Craig's List, he advertised for the sale of his new laptop for $1,300. Shelton testified that, a few days later, he received a response to his advertisement and arranged to meet an individual to purchase the laptop. Shelton testified that he arranged to meet the individual on September 12, 2012, around 4:00 p.m. at the Trojan Grill, a restaurant on campus, to sell his laptop for $1,300. Shelton testified that he had his roommate, Christopher Dunbar, go with him, and his friends Tyler Kent, Carissa Asetta, and Ryan Reed went as well. Shelton testified that he sat with Kent and Reed at one table, and Asetta and Dunbar sat at a nearby table to observe. Shelton further testified that two men arrived to purchase the laptop and that both men were black —one wearing a white tank top and one wearing a black sleeveless shirt. Shelton testified that they sat and talked for about fifteen minutes and that the two men stated they were waiting on their friend to arrive with the cash to purchase the laptop; suddenly, one of the men grabbed the laptop and started to run. Shelton testified that he stood up to run after him, but Hinton pushed him in the back and shoved him into some crepe myrtles and rose bushes. Shelton testified that when he stood back up, Hinton had the laptop, and Reed had tackled the man in the black shirt to the ground. Shelton testified that he followed Hinton and saw that Hinton had a pistol in his right hand and the laptop in his left hand. Shelton testified that

he followed Hinton, who met up with his accomplice, and when the police arrived soon thereafter, Hinton was apprehended.

Dunbar testified that he accompanied Shelton to sell the laptop on the day in question and sat a few tables over from Shelton and witnessed the attempted sale of the laptop. Dunbar testified that when the laptop was taken, he immediately called campus security and was directing law enforcement to the location of the two men. Dunbar further testified that Hinton pointed the pistol at him two times—both before and after the laptop was taken from Shelton. Specifically, Dunbar testified that Hinton pointed the gun at him first before Hinton grabbed the laptop from the man in the black shirt and then during the chase after Hinton grabbed the laptop from the man in the black shirt. Law enforcement testified that they arrived at the scene, recovered the laptop and firearm, and apprehended Hinton. The serial number on the firearm had been scratched off.

Upon review, the testimony presented at trial, viewed in the light most favorable to the State, establishes that Hinton committed theft by threat of serious physical injury. Here, the record demonstrates that Dunbar testified that he was threatened with the gun two times, including *before* the laptop was obtained by Hinton and after Hinton obtained it. Dunbar testified that, while on the phone with law enforcement, when Hinton's accomplice passed the laptop off to Hinton, Dunbar followed Hinton and

> [Hinton] had both the gun and the laptop. . . . And right when we hit the grassy area, that is when [Hinton] began to turn around, . . . [a]nd that's when I, again, had the gun pointed at me.

Later in his testimony, on redirect examination, Dunbar testified again:

5

PROSECUTOR: Whenever the laptop was handed off, you said that you don't remember it; it's been two years ago; you don't remember exactly how it was caught; is that right?

DUNBAR: I remember that it seemed almost like a – – like a sports' maneuver, like a – – almost like a handoff, like –

PROSECUTOR: Okay. So you can recall that it was a handoff, but you can't recall exactly how it was caught?

DUNBAR: I don't know how his arms were around it while this happened, but I know that it looked like he was falling and – – and he lifted up the laptop to be grabbed, and it was grabbed.

PROSECUTOR: By whom?

DUNBAR: By the man who pointed the gun at me – gun at me originally.

PROSECUTOR: Okay. And so that was after the gun had been pointed at you?

DUNBAR: Yes.

Thus, Dunbar testified that the gun was pointed at him both before and after the laptop was obtained by Hinton. Here, viewing the evidence in the light most favorable to the State, as we must, and giving the statutory definition of "obtain" its ordinary and usually accepted meaning in common language, there is substantial evidence to support Hinton's conviction. *Crawford v. State*, 309 Ark. 54, 55, 827 S.W.2d 134, 135 (1992); *Smith v. State*, 306 Ark. 483, 815 S.W.2d 922 (1991). In other words, substantial evidence supports that Hinton, in relation to the property—the laptop—brought about a transfer of the laptop by threat of serious physical injury, when Hinton pointed a firearm at Dunbar and then grabbed the

SLIP OPINION

laptop. *See* Ark. Code Ann. §§ 5–36–101(A)(7) & 5–36–103. Accordingly, we affirm on this point.

## II. *Firearm Enhancement*

For his second point on appeal, Hinton contends that the five-year enhancement for each offense is an illegal sentence. Hinton asserts that the enhancements he received pursuant to Ark. Code Ann. § 16–90–120(a) are illegal because that statute does not apply when the underlying felony is simple possession of a firearm because such an offense cannot be committed without a firearm. In other words, Hinton contends that the firearm–enhancement statute does not apply to felonies that require possession as an element of the offense.

The statute in question is Ark. Code Ann. § 16–90–120(a), which provides as follows:

> Any person convicted of any offense that is classified by the laws of this state as a felony who employed any firearm of any character as a means of committing or escaping from the felony, in the discretion of the sentencing court, may be subjected to an additional period of confinement in the state penitentiary for a period not to exceed fifteen (15) years.

We construe criminal statutes strictly, resolving any doubts in favor of the defendant. *Thompson*, 2014 Ark. 413, at 5, 464 S.W.3d at 114. We also adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. *Id*. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Id*.

Applying our rules of statutory construction, we must first look to the plain language of the statute. Despite the plain language of the term "any . . . felony" in Ark. Code Ann. § 16-90-120(a), Hinton relies on *McKeever v. State*, 367 Ark. 374, 240 S.W.3d, 583 (2006), and asserts that we narrowed the scope of the statute by limiting its application so that any felony that requires the possession of a firearm as an element of the offense is no longer subject to the enhancement. Specifically, Hinton asserts that in *McKeever*, this court resurrected a repealed statute, Ark. Code Ann. § 5-4-505, and "engrafted" the repealed statute into our current law. The repealed statute, Ark. Code Ann. § 5-4-505, specifically stated that the enhancement did not apply to a felony conviction that required possession or use of a deadly weapon as the offense. Therefore, Hinton contends that *McKeever* has revived the repealed exception to the enhancement that Hinton now argues is applicable to his case.

However, Hinton's argument is misplaced for three reasons. First, a careful review of *McKeever* demonstrates that Hinton's analysis of that opinion is incorrect. In *McKeever*, McKeever was charged with committing terroristic acts. In *McKeever*, we explained,

> The issue before the court is one of statutory interpretation. . . . The plain language of the firearm-enhancement statute shows that the legislature intended for it to apply to "any offense . . . in addition to any fine or penalty provided by law as punishment for the felony itself." Ark. Code Ann. § 16-90-120. In the instant case, McKeever committed three separate criminal offenses, and each of those three offenses was committed with a firearm. As such, each of the offenses was subject to a sentence enhancement under Ark. Code Ann. § 16-90-120. Still, McKeever argues that in pulling a gun and firing at the car, he committed only one act that the legislature sought to punish under the firearm-enhancement statute – that is to say, he used one firearm in one violent incident. Thus, he appears to contend that since he used only one firearm in one incident during the commission of three separate offenses, he is subject only to one enhancement. We disagree. This court rejected a similar argument in *Welch v. State*, 269 Ark. 208, 599 S.W.2d 717 (1980). In that case, appellant argued that the punishment for each of the three offenses could not be enhanced under the

8

firearm-enhancement statute because all three offenses were parts of a single criminal episode. We stated:

> Even so, the robbery and the two rapes were separate offenses, each of which could have been committed with or without a firearm. No double jeopardy is involved, because there is no constitutional barrier to the enhancement of the separate punishment for each of three distinct crimes, all of which were committed with a firearm. *Welch*, 269 Ark. at 212, 599 S.W.2d at 720.

> Likewise, in the instant case, each terroristic act was a separate offense, each of which could have been committed with or without a firearm. Each of the three distinct crimes was committed with a firearm; thus, each crime was subject to enhancement. The circuit court did not err in sentencing McKeever to multiple firearm enhancements under Ark. Code Ann. § 16–90–120.

*McKeever*, 367 Ark. at 379–80, 240 S.W.3d at 587–88 (2006).

Thus, this court did not make a distinction that a felony that could be committed without a firearm cannot be subject to the firearm enhancement. Second, Hinton's argument is misplaced because the statute at issue clearly states "any . . . felony" and therefore does not support Hinton's position. Courts do not read into a statute a provision that was not included by the General Assembly—and the repealed statute has not been recodified. *See Harrell v. State*, 2012 Ark. 421, at 2. Third, even applying strict construction of penal statutes does not override the primary consideration of all statutory construction "the intent of the legislature." *Dollar v. State*, 287 Ark. 61, 697 S.W.2d 868 (1985). Here, Hinton has failed to show that the firearm enhancement for his conviction for possessing a defaced firearm pursuant to Ark. Code Ann. § 5-73-107 is an illegal sentence, and we affirm on this point.

Affirmed.

DANIELSON, WOOD, and WYNNE, JJ., concurring in part and dissenting in part.

HART, J., concurring in part and dissenting in part.

ROBIN F. WYNNE, **Justice, concurring in part and dissenting in part.** While I fully agree with the majority regarding the second point on appeal, I would reverse on the first point because the evidence is insufficient to support the verdict. The undisputed evidence shows that neither appellant nor his accomplice obtained the laptop by threat of serious physical injury to any person. Therefore, I respectfully dissent.

As noted in the majority opinion, this case involves the taking of a laptop computer from a college student, Samuel Shelton, who thought that he was meeting a potential purchaser on the campus of the University of Arkansas at Little Rock. Shelton's roommate, Christopher Dunbar, and friends Tyler Kent, Carissa Asetta, and Ryan Reed were with him; Reed and Kent sat at a table with Shelton, while Dunbar and Asetta sat at a different table to observe. Two men, one wearing a white shirt and the other wearing a black shirt, came up to Shelton and asked if he was the one selling the laptop; they said that their friend was coming to purchase it. They sat there for about fifteen minutes, when suddenly the man in the black shirt grabbed the laptop and started to run. Shelton stood up to run after him but was pushed down by the man in the white shirt, who was later identified as Hinton. Ryan Reed tackled the man with the laptop, and Hinton came by, grabbed the laptop, and continued to run. Chris Dunbar immediately dialed campus police and kept them on the phone as he followed Hinton. Shelton and Dunbar followed the two men as they ran off campus; Kent followed from behind. Shelton and Dunbar both testified to seeing Hinton holding a small pistol in his right hand as he carried the laptop box in his left hand. Dunbar testified that Hinton pointed the gun at him on two occasions after the laptop was taken.

Hinton argues that the circuit court erred in denying his motion for directed verdict on the charge of Class B felony theft of property by threat of serious physical injury because the State failed to introduce substantial evidence that either appellant or his accomplice obtained Shelton's laptop computer by threat of serious physical injury. On appeal from the denial of a directed-verdict motion challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, considering only the evidence that supports the verdict, and determine whether the verdict is supported by substantial evidence, which is evidence of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Turner v. State*, 2014 Ark. 415, at 3, 443 S.W.3d 535, 537.

As applicable in the present case, a person commits theft of property if he or she knowingly "[t]akes or exercises unauthorized control over . . . the property of another person with the purpose of depriving the owner of the property." Ark. Code Ann. § 5–36–103(a) (Repl. 2013). Hinton was convicted under Ark. Code Ann. section 5–36–103(b)(1)(B) for obtaining Shelton's laptop computer "by threat of serious physical injury to any person." Here, Hinton argues that when he obtained the laptop, there was no threat of serious physical injury to any person. The State concedes that the act of pushing Shelton to the ground was not a threat of serious physical injury. Instead, the State contends that "appellant's display of the gun and pointing it at Dunbar as he was fleeing constituted the threat of serious injury." According to the State, that this occurred after appellant's accomplice took the computer does not matter because theft is a continuing offense, lasting as long as the thief retains the stolen

property. The case that the State cites for this proposition, however, is not on point. In *Hall v. State*, 299 Ark. 209, 772 S.W.2d 317 (1989), this court held that theft by receiving—not theft of property—is a continuing offense. 299 Ark. at 213, 772 S.W.2d at 320 (citing *State v. Reeves*, 264 Ark. 622, 574 S.W.2d 647 (1978) (theft by receiving is a continuing offense for purposes of statute of limitations)). Notably, the State does not argue that Hinton pointed the gun at Dunbar before the laptop was taken from Shelton. Instead, the State contends that it is sufficient that Hinton pointed the gun at Dunbar twice during the pursuit.

I find merit in Hinton's argument. He and his accomplice[1] obtained the computer without a threat of serious physical injury—his accomplice simply grabbed it and ran. The threat of serious physical injury by pointing the gun clearly occurred *after* the property had been obtained from Shelton. Nor was there a threat of serious physical injury to any person when the laptop was passed from his accomplice to Hinton. Unlike the offense of robbery, the General Assembly has not defined the theft–of–property statute to include the use or threat of force in resisting apprehension immediately after committing the offense. *See* Ark. Code Ann. § 5-12-102(a) ("A person commits robbery if, with the purpose of committing a felony or misdemeanor theft *or resisting apprehension immediately after committing a felony or misdemeanor theft*, the person employs or threatens to immediately employ physical force upon another person." (Emphasis added.))

---

[1]We have said that there is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Wilson v. State*, 365 Ark. 664, 666, 232 S.W.3d 455, 458 (2006). When two people assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Id*.

12

Accordingly, I would reverse Hinton's conviction for Class B felony theft of property.

DANIELSON and WOOD, JJ., join.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.**Though I agree to affirm the theft conviction, I respectfully dissent from the majority's decision to affirm the application of the sentencing-enhancement statute for *employing* a firearm to the crime of *possession* of a defaced firearm. The sentencing-enhancement statute provides for enhancement of a sentence for "[a]ny person convicted of any offense that is classified by the laws of this state as a felony who *employed* any firearm of any character *as a means of* committing or escaping from the felony. Ark. Code Ann. § 16-90-120(a) (Supp. 2015) (emphasis added). A standard dictionary definition of "employ" is "to make use of." *Webster's Third New International Dictionary* 743 (3d ed. 2002). The conviction that was enhanced was Hinton's conviction for *possession* of a defaced firearm, which a person commits if he "knowingly *possesses* a firearm with a manufacturer's serial number or other identification mark required by law that has been removed, defaced, marred, altered, or destroyed." Ark. Code Ann. § 5-73-107(a) (Repl. 2005) (emphasis added). The enhancement statute, by its plain terms, requires more than *possession*; it requires *employing* a firearm *as a means of* committing a felony. Thus, the sentencing enhancement does not apply.

Hinton was also convicted at the trial of aggravated robbery and Class B felony theft of property. The aggravated-robbery statute, in part, requires the person to threaten to immediately employ physical force upon another person and be armed with a deadly weapon. Ark. Code Ann. § 5-12-102(a) (Repl. 2013); Ark. Code Ann. § 5-12-103(a)(1). For the theft

of property, it is a Class B felony if the "property is obtained by the threat of serious physical injury to any person." Ark. Code Ann. § 5–36–103(b)(1)(B). A person could employ a firearm as a means of committing these crimes. Specifically, a person could employ a firearm as a means of making the threat required for both crimes.

Presumably, the circuit court concluded that Hinton made use of—employed—a firearm as a means of possessing a defaced firearm. That conclusion, however, defies a commonsense understanding of ordinary words. Hinton did not somehow *make use of* the firearm *as a means of possessing* the firearm. Rather, he *possessed* the firearm.[1]

*Llewellyn J. Marczuk*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

---

[1]The repeal of another firearm–enhancement statute, Arkansas Code Annotated section 5–4–505, has no bearing on the interpretation of the firearm–enhancement statute at issue here, Arkansas Code Annotated section 16–90–120(a).