

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–16–593

| | |
|---|---|
| | Opinion Delivered: September 27, 2017 |
| MARK ANTHONY MOSLEY | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 72CR-15-765] |
| V. | |
| | HONORABLE MARK LINDSAY, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Mark A. Mosley appeals after he was convicted by the Washington County Circuit Court of theft of property as a habitual offender. He was sentenced to serve a total of 120 months' imprisonment. On appeal, Mosley's sole argument is that there was insufficient evidence to convict him of theft of property. We affirm.

Mosley was arrested and charged with commercial burglary, a class C felony, under Arkansas Code Annotated section 5-39-201(b)(1) (Repl. 2013); theft of property, a class C felony under Arkansas Code Annotated section 5-36-103(b)(2); and as a habitual offender under Arkansas Code Annotated section 5-4-501(b). A jury trial was held on December 14–15, 2015, and the following facts were introduced at trial.

Williams Tractor is located in Fayetteville, Arkansas, and sells farm implements and lawn equipment. At approximately 3:00 a.m. on Friday, March 27, 2015, the silent-security alarm went off at Williams Tractor. The alarm-monitoring company contacted the

designated employee of Williams Tractor, and he drove to the business. As this employee drove up to Williams Tractor, he saw the front gate open and a zero-turn lawn mower sitting near the gate. He also noticed a U-Haul truck driving in the vicinity. The Fayetteville Police Department arrived on the scene. During their immediate investigation, police officers noticed distinct shoe prints on and about the zero-turn lawn mower parked at the gate. Apparently, the lawn mower had run out of gas. Police officers saw a man walking down a nearby street. Police stopped the man, and during their conversation, the man told them that he had been fighting with his girlfriend. After further discussions and observations of this man, they determined his shoe prints matched the distinct shoe prints on and about the mower. The man, later identified as Ledrick Hinton, was arrested for loitering and commercial theft of property.

Later, police found a second zero-turn lawn mower outside the fence and also out of gas. A Polaris Razor ATV (Polaris Razor), worth approximately $14,000, was discovered missing. The ground was wet around Williams Tractor, and police were able to follow tire tracks out of the gate and around the building toward the back of the property. At the end of the tire tracks, police discovered a makeshift ramp made of railroad ties, mulch, and brush. Police subsequently contacted the neighboring business, Total Document Solutions (TDS). TDS had a security camera trained on the rear of its property, which coincidentally overlooked the rear of the Williams Tractor property. This security-camera footage contained images of the theft of the Polaris Razor. The TDS images with time stamps between 2:28 a.m. and 3:03 a.m. depicted two or three unidentifiable men, a white Chevy Tahoe, and a U-Haul truck.

SLIP OPINION

While Ledrick Hinton was being held at the Washington County detention center, Detective Scott O'Dell questioned him. During questioning, Hinton allowed Detective O'Dell to look at his cell phone. Detective O'Dell testified at trial that there were two phone numbers listed in Hinton's phone that were very active during the time just before and after the theft. The contacts associated with those numbers according to Hinton's phone were "Mark" and "Mark in the Dark." Detective O'Dell testified that after further research, he determined that Verizon was the carrier for the phone number associated with "Mark in the Dark," and AT&T was the carrier for the phone number associated with "Mark." The AT&T phone could be tracked through cell-tower usage to be in the vicinity of Williams Tractor at the time of the theft, around 3:00 a.m., and the AT&T phone was later used around 8:30–9:00 that same morning near Palestine, Arkansas. Also, Detective O'Dell was able to retrieve information from the AT&T phone that this phone was used to contact a person by the name of Larry Wilson that same morning. Once the AT&T phone was identified with Mosley, Detective O'Dell researched law enforcement records and discovered that Mosley was the registered owner of a white 2002 Chevy Tahoe—the same vehicle used in the Williams Tractor theft.

Later, Detective O'Dell contacted Larry Wilson in Wynne, Arkansas, and asked him about the phone calls between him and Mosley on the morning of March 27. Wilson subsequently testified that he had a prior relationship with Mosley. He did not know Mosley's last name; he knew him only as Mark the "Little Rock Man." Wilson testified that Mosley contacted him either by text or phone the morning of March 27 and asked him if he would be interested in buying a Polaris ATV. They met in the parking lot of a service

station off of I-40 in Palestine, Arkansas. Mosley was driving a white SUV, and there was a U-Haul truck present. In the back of the U-Haul truck was what appeared to be a new Polaris Razor ATV. Wilson told Mosley that he was not interested in the "Razor" but that if Mosley had a "Ranger," he would be interested. Wilson testified that Mosley offered to sell him the "Razor" for $8500, but he declined.

In addition to the testimony of Detective O'Dell and Larry Wilson, there was extensive testimony from representatives of AT&T, law enforcement officials, state agencies, and others concerning the identity and locations of Mosley's AT&T phone and the machinations necessary to follow his phone around the state. There was testimony from Jessica Schermacher, an employee of the State of Arkansas. One of her job responsibilities is to maintain the database of persons on parole. Persons on parole must provide the state with accurate contact information. Mosley was on parole for an unrelated crime on March 27, 2015, the date of the Williams Tractor theft. Schermacher testified that Mosley had previously provided the agency with two phone numbers for his contact information. Those telephone numbers were the same numbers as the AT&T and Verizon phone numbers identified by Detective O'Dell and identified as "Mark" and "Mark in the Dark" on Hinton's phone. Furthermore, the AT&T number was the same number used by Mosley to contact Wilson to arrange for the meeting in Palestine after the theft.

Brian Wann, an AT&T Mobility employee in Fayetteville, Arkansas, testified that he had looked at the phone records for the AT&T phone. Wann testified regarding the cell-tower records for the AT&T phone and confirmed much of the information already

provided by Detective O'Dell. On cross-examination, Wann admitted that Otis Brown, not Mosley, was listed as the subscriber for the AT&T phone.

Whitney Bohannan, a title clerk and finance employee at Williams Tractor, testified that the Razor was worth $14,015.47, including the additional accessories that were added to it.

After the State rested, Mosley moved for a directed verdict. Regarding the theft-of-property charge, Mosley argued that the State failed to prove that he had knowingly taken or exercised unauthorized control over, or made an unauthorized transfer of interest in, the property of another person while depriving the owner thereof. He more specifically argued that the only evidence introduced by the State was that he had control over a Razor in Palestine, Arkansas, which was in another county and outside the jurisdiction of the instant charge. The trial court denied the motion.

The jury found Mosley not guilty of commercial burglary and guilty of theft of property. The jury recommended a sentence of ten years, which the trial court imposed. This timely appeal followed.

## I. *Sufficiency of the Evidence*

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Hinton v. State*, 2015 Ark. 479, 477 S.W.3d 517. When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Id.* The sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007); *Boyd v. State*,

2016 Ark. App. 407, 500 S.W.3d 772. Substantial evidence is evidence which is of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Hinton*, *supra*. Finally, the credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Circumstantial evidence may constitute substantial evidence to support a conviction. *Wyles*, *supra*. Guilt can be established without direct evidence, and evidence of guilt is not less because it is circumstantial. *Id.* The longstanding rule is that for circumstantial evidence to be substantial, it must exclude every other reasonable hypothesis than that of guilt of the accused. *Id.* Stated another way, circumstantial evidence provides a basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Such a determination is a question of fact for the jury to determine. *Id.* We will disturb the jury's determination only if the evidence did not meet the required standards, leaving the jury to speculation and conjecture in reaching its verdict. *Id.*

Mosley contends that the trial court should have granted his motion for directed verdict because the circumstantial evidence produced at trial was insufficient to find him guilty of theft of property. We disagree.

A person commits theft of property if he or she knowingly (1) takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property; or (2) obtains

the property of another person by deception or by threat with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a). Theft of property is a class C felony if the value of the property is less than twenty-five thousand dollars ($25,000) but more than five thousand dollars ($5,000). Ark. Code Ann. § 5-36-103(b)(2)(A).

Here, the circumstantial evidence was sufficient to show that Mosley knowingly exercised unauthorized control over the Polaris Razor when he participated in the theft from Williams Tractor in Fayetteville. Detective O'Dell testified at length that he had linked information from two phone numbers that Mosley had given for himself to a state agency to the same numbers that were listed in Hinton's phone as "Mark" and "Mark in the Dark." Cell-phone-location data placed Mosley's AT&T phone in the vicinity of Williams Tractor at the time of the theft and in the same areas and at the same times that Mosley had corroborated during the investigation. Video surveillance showed that a white SUV was used in the theft of the Polaris Razor and that Mosley owned a similar white 2002 Chevy Tahoe. Furthermore, Mosley's subsequent attempt to sell the Polaris Razor was sufficient to prove that his purpose was to deprive Williams Tractor of its property. Wilson testified that Mosley contacted him on the morning of the theft and attempted to sell him what appeared to be a new Polaris Razor for only $8500. Mosley was driving the 2002 white Chevy Tahoe, and the Polaris Razor was in a U-Haul truck similar to the U-Haul truck seen on the security tapes. After considering all the circumstantial evidence in light

of our standard of review, we hold that there was sufficient evidence to support Mosley's conviction for theft of property. As such, we affirm.

Affirmed.

ABRAMSON and VAUGHT, JJ., agree.

*Margo D. Warner*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., and *Bryan Foster*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the Supervision of *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.