KENNETH S. HIXSON, Judge
Appellant Jeffrey Allen Wolfe appeals after he was convicted by a Yell County jury of two counts of theft of property as a habitual offender. He was sentenced to serve 60 months' imprisonment for count one, theft of property, a Class C felony, and 84 months' imprisonment for count two, theft of property, a Class B felony, to be served consecutively for a total of 144 months' imprisonment. On appeal, appellant's sole argument is that there was insufficient evidence to convict him of the two counts of theft of property. We affirm.
Appellant was arrested and charged with theft of property, a Class C felony under Arkansas Code Annotated section 5-36-103(b)(2) (Repl. 2013); with theft of *927 property, a Class B felony under Arkansas Code Annotated section 5-36-103(b)(1) ; and as a habitual offender under Arkansas Code Annotated section 5-4-501. A jury trial was held on January 19, 2017, and the following facts were introduced at trial.
Much of the facts are undisputed in this case. A service van containing plumbing tools from Mountain Valley Plumbing was reported stolen in Plainview, Arkansas, on July 10, 2016. Detective Gary Morrison testified that he was assigned to investigate the case. Detective Kenneth Poore discovered the keys to the van at the home of Candice Howard, who lived in Dardanelle, Arkansas. Howard testified that appellant had stayed with her for a few days and that appellant had left the keys and other belongings on her counter. Appellant was not at the residence when Detective Poore discovered the keys at the home. Detective Morrison and Lieutenant Scott Moore testified that the van was recovered eleven days after it was reported stolen on the Dardanelle side of the Arkansas River. Lieutenant Moore testified that the van had been left unlocked and that the back of the van was buried in a sandbar. Deidre Thurman testified that, while the van still contained tools in it, some of the tools were missing. Thurman's family owns Mountain Valley Plumbing. Thurman further testified that the van cost approximately $45,000 in 2014 and still maintained a value of approximately $39,000 when it was stolen. The cost of the tools was approximately $30,000-$40,000. Thurman testified that a "few thousand" dollars' worth of tools were missing from the van and that one of the recovered tools cost $900 to repair.
After the State rested its case, appellant moved for a directed verdict. He argued that the State had failed to make a prima facia case and specifically challenged the "intent" element. After the trial court denied his motion, appellant testified on his own behalf. Appellant admitted that he took the van and was guilty of unauthorized use of a motor vehicle. However, he argued that he was not guilty of theft because he did not intend to "not return the van." He explained that he is diabetic and took the van because he was having an "episode." Appellant testified that he had traveled with Howard and two other females to Lake Nimrod. Because he wanted to stay longer, he told Howard and the others to leave without him. However, he had no food or water, and he admitted that he had taken methamphetamine. Appellant further testified that shortly after midnight he began to feel faint, disoriented, and that he would "fall out" at any minute. However, he could not call anyone for help because the screen on his phone had shattered. Although he had passed by houses at 3:00 or 4:00 a.m., he did not want to knock on people's doors because he "looked like a total mess" and did not want to "surprise anybody." Therefore, he took the van that he found. He testified that it had been left unlocked and had the keys inside it. Appellant claimed that he immediately went to McDonald's and then parked the van down a "rougher road" in a "somewhat ... public place" by the river because he was embarrassed. He testified that he locked the van and did not know why he kept the keys in his pocket. However, he claimed that he did not intend to keep the van or the tools inside.
Appellant admitted that he had six to eight convictions but did not remember having thirteen convictions as the State alleged. Appellant additionally indicated that he wrote an "apology letter" to the victim after his arrest. The letter was introduced into evidence. In the letter, he requested the victim to contact the prosecutor and recommend that he be allowed to participate in a drug-court program *928 rather than being imprisoned. Appellant reiterated his claims that he took the van as an emergency and stated that he did not take anything from the van.
After appellant rested, he renewed his motion for a directed verdict. He specifically challenged the intent element and additionally argued that the value of the van and the tools had not been adequately established. The trial court denied his motion. The jury found him guilty of both charges. Appellant stipulated that he had over four prior felony convictions, and he was sentenced as a habitual offender to serve a total of 144 months' imprisonment. Because appellant's notice of appeal was untimely filed, appellant filed a motion and amended motion for belated appeal with our supreme court. Our supreme court granted appellant's amended motion for belated appeal and subsequently transferred the case to our court; this appeal followed.
I. Sufficiency of the Evidence
A motion for a directed verdict is a challenge to the sufficiency of the evidence. Hinton v. State , 2015 Ark. 479, 477 S.W.3d 517. When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. Id. The sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. Wyles v. State , 368 Ark. 646, 249 S.W.3d 782 (2007) ; Boyd v. State , 2016 Ark. App. 407, 500 S.W.3d 772. Substantial evidence is evidence that is of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. Hinton , supra. Finally, the credibility of witnesses is an issue for the jury and not the court. Id. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. Id.
A person commits theft of property if he or she knowingly (1) takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property; or (2) obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a). Theft of property is a Class B felony if the value of the property is twenty-five thousand dollars ($25,000) or more and a Class C felony if the value of the property is less than twenty-five thousand dollars ($25,000) but more than five thousand dollars ($5,000). Ark. Code Ann. § 5-36-103(b)(1)-(2). A person can "deprive" another person of his or her property in three ways:
(A) Withhold property or to cause it to be withheld either permanently or under circumstances such that a major portion of its economic value, use, or benefit is appropriated to the actor or lost to the owner;
(B) Withhold property or to cause it to be withheld with the purpose to restore it only upon the payment of a reward or other compensation; or
(C) Dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely[.]
Ark. Code Ann. § 5-36-101(A)-(C) (emphasis added).
Appellant contends that substantial evidence does not exist to support his convictions. Appellant admits that he knowingly exercised unauthorized control over the property. However, he argues that the State failed to prove that he intended to "deprive" the owner, Mountain Valley *929 Plumbing, of the van or the tools. He maintains, as he did at trial, that he merely took the van with the tools inside as a medical emergency because he needed to go to McDonald's to get some food to cure his "impending diabetic episode." Then, because he was embarrassed, he parked the van by the river in a public location and claims that he did not take any of the tools. Further, appellant explains that, although he took the keys to the van, he left them on Howard's counter in plain sight. He suggests that because he did not return to Howard's home to retrieve the keys, he did not have the intent to return to the van, which he argues was necessary to show that he intended to "deprive" the owner after taking the van for medical purposes. Therefore, appellant argues that he lacked the requisite intent to constitute theft. We disagree.
Intent can rarely be proved by direct evidence, but may be inferred from the circumstances of the crime, and jurors may draw on common knowledge and experience to infer intent. Pruitt v. State , 2011 Ark. App. 754, 2011 WL 6065008. Here, the State offered testimony at trial that indicated appellant had admitted he took the van and that he was, by his own admission, under the influence of methamphetamine. Law enforcement discovered the keys to the van in Howard's residence, where appellant had been staying and left other personal effects. Law enforcement further testified that the van was subsequently found eleven days after it was stolen. The van was found unlocked and buried in a sandbar by the Arkansas River in an isolated place. There was no evidence that appellant had attempted to return the van or tools or to contact the owner. Although appellant argues that he did not intend to deprive the owner of the property but only temporarily used the van for medical purposes, his argument is misplaced. The theft statute makes no exception for a "temporary deprivation." Winston v. State , 368 Ark. 105, 111, 243 S.W.3d 304, 308 (2006) (citing Moore v. State , 299 Ark. 532, 773 S.W.2d 834 (1989) ). As in Winston , the jury in the instant case could have concluded from the evidence that appellant intended to permanently deprive the owner of the property for at least the time he was in possession of it, if not longer.
Moreover, a jury is permitted to consider and to give weight to any false and improbable statements made by an accused in explaining suspicious circumstances; furthermore, it is the responsibility of the jury to weigh the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence. Pruitt , supra. Despite appellant's testimony that he did not take any of the tools, Thurman testified that tools were missing from the vehicle after it was recovered, and she testified as to the value of the van and the tools. The jury was entitled to disbelieve appellant's testimony and explanation of events. Winston , supra. Accordingly, after considering all the evidence in the light most favorable to the State, we hold that there was sufficient evidence to support appellant's convictions for theft of property.
Affirmed.
Abramson and Virden, JJ., agree.