Cite as 2025 Ark. App. 413

# ARKANSAS COURT OF APPEALS
## DIVISION III
#### No. CR-24-673

|  |  |
|---|---|
| PAUL EDWARD BROWN | Opinion Delivered September 10, 2025 |
| V. | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-23-726] |
| STATE OF ARKANSAS | HONORABLE CANDACE A. SETTLE, JUDGE |
|  | AFFIRMED |

**BART F. VIRDEN, Judge**

Paul Edward Brown, Jr., appeals his second-degree-battery conviction by a Crawford County Circuit Court jury, arguing that evidence is insufficient to uphold his conviction. We affirm.

## I. *Relevant Facts*

On March 20, 2024, Brown, an inmate in the Crawford County Detention Center, was charged by amended criminal information with second-degree battery as a habitual offender for his participation in the November 23, 2023 attack on a fellow inmate.

On July 8, 2024, a jury trial was held, and the following evidence and testimony supporting the conviction was adduced. The jail deputy on duty the night of November 23, 2023, Lane Wertenberger, testified that inmate Brian Peugh was suspected by the other inmates of stealing tobacco pouches. Brown and two other inmates, Kevin Neal and James

Bentley, "decided to take it into their hands" and attacked Peugh. When questioned, all three inmates denied any involvement in the attack on Peugh. The surveillance video was played for the jury, and Wertenberger testified that it showed Neal and Bentley blocking the camera during the attack. Wertenberger explained, "I could identify Neal and Bently assaulting Mr. Peugh, but since they knew where the cameras were, they just kind of stood in front of the bunks to where I couldn't see." Wertenberger testified that "the inmates aren't dumb. They know where the camera views are, and if they're going to do something, they're going to try to hide it. . . . So they sit in front of the camera views." Photographs of Peugh's injuries were admitted and shown to the jury.

Captain VC Winters, the jail administrator, testified that the hospital bill for Peugh's treatment was $928. He also testified that it was normal for inmates to block the camera view of an attack on another inmate. Winters explained that "[t]hey'll line up, or as you can see, towels are hung up. It's—it's a common occurrence. If there is going to be a physical altercation that they tend to line up and people sometimes just want to watch."

Brian Peugh testified that on November 23, 2023, he was sitting on his bed when he was confronted about some stolen tobacco pouches. He explained that Bentley, Neal, and Brown strip-searched him. He recalled that after the search, someone hit him five times on the right side of his head. Peugh stated, "I did not see any of them hit me. I know that they were—the three of them were standing there when that happened." After the attack, Peugh saw Brown holding his (Peugh's) commissary items that had been stored under his bunk. Peugh testified that the bunk behind his belonged to Brown, and he recalled that another

inmate named Fantuzzi was standing near his bunk when the attack occurred. Other inmates were standing "on the opposite side" and to the right of his bed. No other inmates besides Neal, Bentley, and Brown had accused him of stealing tobacco or were involved in the strip-search.

Dr. Chiricka Orisakwe, the emergency department physician who treated Peugh, testified that Peugh suffered a broken nose and zygomatic arch.

Brown moved for a directed verdict, arguing that the State did not prove that he struck Peugh. Specifically, he asserted that there was no direct testimony or evidence that he caused Peugh's serious physical injuries, only circumstantial evidence. The motion was denied. Brown renewed his motion, and again, it was denied.

The jury found Brown guilty of second-degree battery, and he was sentenced to twelve years' imprisonment in the Arkansas Division of Correction as a habitual offender. Brown was assessed a $250 fine and $928 in restitution. He timely filed his notice of appeal, and this appeal followed.

## II. *Discussion*

### A. Standard of Review and Applicable Law

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Hinton v. State*, 2015 Ark. 479, 477 S.W.3d 517. When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Id.* The sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or

3

circumstantial. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007); *Hoyle v. State*, 371 Ark. 495, 502, 268 S.W.3d 313, 318 (2007). Circumstantial evidence can be substantial if it excludes every other reasonable hypothesis consistent with innocence. *Miller v. State*, 2018 Ark. App. 478, 561 S.W.3d 345. Whether the evidence excludes every other reasonable hypothesis consistent with innocence is a determination to be made by the trier of fact. *Id.* Weighing the evidence and credibility determinations likewise are made by the trier of fact. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Hinton, supra.* The trier of fact resolves questions of conflicting testimony and inconsistent evidence. *Id.*

### B. Points on Appeal

For his first point on appeal, Brown argues that the evidence is insufficient to support his conviction of second-degree battery because the surveillance video does not show him attacking Peugh. He explains that the surveillance video shows other inmates near Peugh and that any of them could have committed the battery.[1] His argument is not well taken.

A person commits battery in the second degree if he or she, with the intent of causing physical injury, causes serious physical injury to another person. Ark. Code Ann. § 5-13-202 (a)(1) (Repl. 2024).

---

[1]Brown notes that during deliberation, the jury rewatched the surveillance video to ascertain who was in the video and to follow Brown's activity specifically. Brown seems to imply that the jury's careful examination of the video belies insufficient evidence of his guilt. Brown cites no authority to support his argument, and the argument itself is unclear.

Even though the video does not show the actual attack, both Captain Winters and Deputy Wertenberger testified that inmates commonly block the view of the camera when attempting any kind of banned activity, including fighting. In light of this testimony, the jury could have reasonably concluded that the attack on Peugh was a group effort among Neal, Bentley, and Brown.

Additionally, testimony at his trial connects Brown to Peugh's attack. Peugh testified that Brown accused him of stealing the tobacco; was involved in his strip-search; and after the beating Brown, went through his belongings.

Brown also contends on appeal that he had a reason other than attacking Peugh to be next to him. Brown explains that their bunks were beside each other; thus, the State's evidence did not exclude every other reasonable hypothesis other than Brown attacking Peugh. Peugh testified that Brown's bunk was near his; however, the jury also saw the video of Brown approach Peugh, flanked by Neal and Bentley, who then blocked the camera's view of what came next. Two equally reasonable conclusions as to what occurred merely gives rise to a suspicion of guilt. *Gregory v. State*, 341 Ark. 243, 248, 15 S.W.3d 690, 694 (2000). Here, what moves the needle past the suspicion of guilt is that the video shows Brown approach Peugh, and then the view is blocked by the two other participants in the strip-search. Peugh was next seen on the video with serious injuries to his face. Even though the evidence against Brown is circumstantial, it is sufficient. Overwhelming evidence of guilt in cases based upon circumstantial evidence is not required. *Id.* Here, the evidence of Brown's guilt meets the

test of substantiality because the jury could reasonably conclude without resort to speculation that Brown's presence near Peugh was to physically attack him. Accordingly, we affirm.

Affirmed.

TUCKER and BROWN, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.